## Staunton.

# H. H. Couch, Administrator of W. W. Laforce, Deceased, v. Clinchfield Coal Corporation.*

September 22, 1927.

Absent, Prentis, P.

1. Adjoining Landowners—*Lateral and Subjacent Support—General Rule.*—It is well settled law that the owner has a right to both lateral and subjacent support for his land, and that the owner of an adjoining tract is liable for any damages occasioned by his failure to furnish such lateral support.

2. Mines and Minerals—*Lateral and Subjacent Support—Case at Bar.*— The instant case was an action by the administrator of the owner of a two acre tract of land against a mining company for the destruction of a well on the two acre tract. The mining company owned in fee simple the coal and mineral lands situate adjoining the two acre tract belonging to plaintiff's intestate and the coal and minerals under the two acre tract also belonged to the mining company. The doctrine of lateral support had no application to the facts in the case, since it nowhere appeared in the evidence that the land of plaintiff's intestate had been in any way disturbed, except that the percolating subterranean waters on the two acre tract had been intercepted and diverted by the mining operations of the defendant company on its own lands. The doctrine of subjacent support was not involved since the defendant had only driven its entries and excavated its haulways and air courses on the two acre tract, and had done this work in a manner which left the tract in its usual and natural condition.

   *Held:* That a judgment for defendant should be affirmed.

3. Adjoining Landowners—*Oil, Gas and Water—Landowner Draining Neighboring Land by Pumping on His Own Land.*—A landowner, under whose land there is oil, gas, or water, cannot complain of a neighbor who in pumping on his own property drains the oil, gas or water from his lands.

*Note.—See *Clinchfield Coal Corporation* v. *Compton, ante,* page 437, 139 S. E. 308.

4. WATERS AND WATERCOURSES—*Underground Waters—Destroying Spring.*— A person may lawfully dig a well on his own ground although he thereby destroys the subterranean undefined sources of his neighbor's spring.

5. WATERS AND WATERCOURSES—*Underground Percolating Waters—Adjoining Landowners—Interference with Subterranean Waters.*—The owner of land, who in the use of his property for mining purposes, interferes with the subterranean flow of water and thus destroys a spring on his neighbor's land, is not liable for the damages thus done unless he is guilty of malice or negligence. The owner of land may dig ditches or sink wells, or in any other manner exercise his dominion over his own land, without being liable at law for the interception or diversion of any underground percolating waters consequent upon such use of his own property.

6. WATERS AND WATERCOURSES—*Percolating Waters—Presumption.*— Waters appearing not to be supplied by a definite flowing stream (flowing in a certain direction by a regular channel with sides and having a substantial existence) are presumed to be the result of the ordinary percolations of water in the soil.

7. MINES AND MINERALS—*Underground Waters—Subjacent Support—Where the Mining Company Owns Both the Surface and the Minerals and Where the Mining Company Owns only the Minerals.*—Where a mining company owns only the minerals on a tract of land, the owner of the surface has a right to subjacent support and if in mining the coal the mining company fails to leave sufficient supports to prevent the strata overlying the coal from breaking and falling and thereby causing a spring upon the tract to go dry, it is liable to the owner of the surface. But where the mining company owns both the surface and the coal on the land and an adjoining landowner is asking for damages occasioned by the action of the mining company in failing to leave sufficient pillars and props to support the roof of the mines on its own land, thereby causing the land to crack and break and intercept and divert the underground percolating waters which supplied a well on the adjoining tract, the adjoining landowner cannot recover.

8. MINES AND MINERALS—*Waters and Watercourses—Action for Destruction of Well—Instructions—Case at Bar.*—In the instant case, an action against a mining company for the destruction of a well on a two acre tract of land, the minerals of which belonged to the mining company and the surface to plaintiff's intestate, the court instructed the jury that the burden was on plaintiff to show that defendant unlawfully and negligently caused the drainage or failure of the well by the wrongful or unlawful failure to leave sufficient supports under the two acre tract in which the well was located, and if it appeared from the evidence that the coal had not been removed from the two acre tract on which the well was located, there could be no recovery.
   *Held:* No error.

9. MINES AND MINERALS—*Waters and Watercourses—Action for Destruction of Well—Instructions—Case at Bar.*—In an action against a mining company for the destruction of a well on the land of plaintiff's intestate, the court instructed the jury that if they believed from the evidence that plaintiff's intestate's well went dry on account of the mining and removal of coal by defendant or by reason of cracks on an adjacent tract of land, then there could be no recovery.
*Held:* No error.

10. MINES AND MINERALS—*Waters and Watercourses—Action for Destruction of Well—Instructions—Case at Bar.*—In an action against a mining company for the destruction of a well on the land of plaintiff's intestate, the court instructed the jury that the defendant in the removal of its coal had the right under the law to drain underground or subterranean waters, streams, pools, or percolations in said soil over or around its seams of coal, and if in so removing its coal it drained the waters in the well it was not responsible or liable in damages to the plaintiff for the loss of the well.
*Held:* No error.

Error to a judgment of the Circuit Court of Russell county, in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*B. T. Wilson* and *A. T. Griffith,* for the plaintiff in error.

*Burns & Kidd* and *W. H. Rouse,* for the defendant in error.

WEST, J., delivered the opinion of the court.

W. W. Laforce was the owner of the surface of a tract of land on Sandy Ridge, in Dickenson county, Virginia, upon which he resided, containing two acres. The coal and minerals thereunder were the property

of the Clinchfield Coal Corporation, hereafter called defendant. The defendant also owned in fee simple the coal and mineral lands situate adjoining the two acre tract, title to which it acquired through *mesne* conveyances from plaintiff's intestate. W. W. Laforce drilled a well on the two acre tract, which, with nearby springs located on the adjoining tracts, furnished the water supply for his family and stock. The only mining done by the defendant on the two acre tract was the driving of its entries and the excavation of haulways and air courses. The mining was carefully done and no pillars or supports thereunder were removed. No cracks or fissures appeared in the roof of the mine, or elsewhere in the two acre tract. The defendant extended its mining operations under the adjoining tracts owned by it, and removed from them, on the north, northeast and south of the two acre tract, all coal and minerals located 200 feet or more from the two acre tract, and left no pillars or props sufficient to support the surface in its natural condition.

When the pillars and props were robbed the roof of the mines gave way and caused cracks and fissures from six to eighteen inches wide to appear in the surface of the adjoining tracts near the southern, northeastern and northwestern borders of the two acre tract. Immediately after these cracks and fissures appeared, the well on the two acre tract and all springs within a half mile thereof became dry and the surface of the land on the two acre tract became less productive from a lack of necessary moisture.

H. H. Couch, administrator, the plaintiff, brought this action against the defendant to recover damages occasioned by its failure to leave stumps, blocks, or pillars of coal sufficient to support the overlying surface in its natural condition.

The trial resulted in a verdict and judgment for the defendant.   To that judgment this writ of error was allowed.

The plaintiff contends that in the conveyance of the coal and mineral by plaintiff's intestate there was "impliedly reserved an easement for the use and benefit of the surface rights on each and every parcel thereof running with the land, and that the defendant's estate was charged with the burden of preserving the dominant estate in its natural condition;" and further, that the "defendant's estate was charged with furnishing both subjacent and lateral support to the lands of the plaintiff's intestate;" and that he was entitled to "recover such damages as resulted to the land from the sinking or withdrawing of the percolating water from said land, which resulted from the failure to furnish subjacent and lateral support to the land of plaintiff's intestate."

The defendant contends that there was "no liability upon the defendant on account of any damages that resulted to the plaintiff's intestate by reason of the removal of all the coal and mineral from lands surrounding the tract of land containing two acres, and its failure to leave sufficient pillars and props to hold the surface in its natural condition, so long as no breaks, cracks or fissures appeared in the two acre tract, regardless of the damage which may have resulted, and that there can be no recovery for the loss of percolating water underlying the land in question."

The plaintiff assigns as error the action of the court in holding:   That plaintiff was not entitled to lateral support; that the conveyance of mineral underlying the seventy-five acre tract of land, with the exception of the surface thereof, did not create an easement in the mineral so conveyed to the extent of furnishing

subjacent support to each and every parcel of the said seventy-five acre tract of land; in refusing to give instructions tendered by the plaintiff; in giving instructions tendered by the defendant; and in refusing to set aside the verdict of the jury.

[1, 2] It is well settled law that the owner has a right to both lateral and subjacent support for his land, and that the owner of the adjoining tracts is liable for any damages occasioned by his failure to furnish such lateral support. But the doctrine of lateral support has no application to the facts in this case, since it nowhere appears in the evidence that the land of the plaintiff's intestate has been in any way disturbed, except that the percolating subterranean waters on the two acre tract have been intercepted and diverted by the mining operations of the defendant company on its own lands. It is also true that the doctrine of subjacent support is not involved in the instant case since the defendant had only driven its entries and excavated its haulways and air courses on the two acre tract, and had done this work in a manner which left this tract in its usual and natural condition.

As we view the case, upon the record, it is only necessary for us to determine the rights of a mine owner, where he is lawfully and carefully mining on his own land, as to intercepting and diverting subterranean water which percolates from his land into his neighbor's land and supplies a well.

[3] The courts are practcally unanimous in holding that a landowner, under whose land there is oil, gas, or water, cannot complain of a neighbor who in pumping on his own property drains the oil, gas, or water from his lands.

In *Higgins Oil and Fuel Co.* v. *Guaranty Oil Co.*, 145 La. 233, 82 So. 206 (May 15, 1919), 5 A. L. R. 411-423, the court held (syllabus):

"1. An owner of land under which there is fugitive mineral oil cannot complain that his neighbor uses a pump in a well located on the neighbor's property, although the effect is to drain oil from beneath that of the property owner."

"2. An owner cannot be deprived, even by statute, of the legitimate use of his property because it may cause a real damage to his neighbor."

"3. An owner of land does not own the fugitive oil beneath it."

And in the opinion (145 La. 246, 82 So. 211, 5 A. L. R. 419), it is said: "The analogy between the subterranean oil and subterranean or percolating waters is, we believe, complete,  *  *  *.  In a pumping case where no surface right of the neighbor was being interfered with, but only the percolating water was being taken, the Supreme Court of Mississippi denied an injunction, although the complainant's supply of water was being thereby reduced. *Clarke County* v. *Mississippi Lumber Co.*, 80 Miss. 535, 31 So. 905. In the civil law the right to drain off by means of a deeper well the subterranean water of the neighbor is well settled, and apparently in the common law too.  20 Am. & Eng. Enc. Law, 314. Judge Thornton, in his work on Oil & Gas, 2d ed., page 49, says that if pumps could not be used, oil territory would be practically useless, and few wells would ever be drilled. And, of course, what is meant by this is that the neighbor cannot complain, even though possibly, or probably, the oil under his land is being drained off by the pump." *Kelley* v. *Ohio Oil Co.*, 57 Ohio St. 317, 49 N. E. 399, 63 Am. St. Rep. 721, 39 L. R. A. 765; *Jones* v. *Forest Oil Co.*, 194 Pa. 379, 44 A. 1074, 48 L. R. A. 748.

[4] A person may lawfully dig a well on his own ground although he thereby destroys the subterranean

undefined sources of his neighbor's spring.   *Mosier· v. Caldwell*, 7 Nev. 363; *Roath* v. *Driscoll*, 20 Conn. 533, 52 Am Dec. 352.

"One owning land cannot recover for injuries to his wells or springs resulting from the lawful exercise of rights of an adjoining owner in his own property." *Jones* v. *Forest Oil Co.*, 194 Pa. 379, 44 Atl. 1074, 48 L. R. A. 748.

"An owner of a tract of land may sink a well, and appropriate to his own use all the percolating water found therein, although it may entirely destroy the well on his neighbor's land."   *People's Gas Co.* v. *Tynes*, 131 Ind. 277, 31 N. E. 59, 16 L. R. A. 443, 31 Am. St. Rep. 433; *Davis* v. *Spaulding*, 157 Mass. 431, 32 N. E. 650, 19 L. R. A. 102.

"As no correlative rights exist between proprietors of adjacent lands with respect to percolating waters, the doctrine of *sic utere tuo*, which presupposes the existence of a legal right which can be injuriously affected, has no application in the determination of the right to use such waters."   *Acton* v. *Blundell*, 12 Mees. & W. 324; *Harwood* v. *Benton*, 32 Vt. 724; *Phelps* v. *Nowlen*, 72 N. Y. 39, 28 Am. Rep. 93; *Haldeman* v. *Bruckhart*, 45 Pa. 514, 84 Am Dec. 511; *Walker* v. *Cronin*, 107 Mass. 555.

[5] "An owner of land, who in mining upon it drains off water and interferes with its subterranean flow either in a well defined stream· or by percolations, and thereby destroys a spring on the land of an adjoining owner, is not, in the absence of negligence and malice, liable in damages therefor."   *Haldeman* v. *Bruckhart*, 45 Pa. 514, 84 Am. Dec. 511.

"The owner of land, who in the use of his property for mining purposes, interferes with the subterranean flow of water and thus destroys a spring in his neigh-

bor's land, is not liable for the damages thus done unless he is guilty of malice or negligence.

"The owner of land may dig ditches or sink wells, or in any other manner exercise his dominion over his own land, without being liable at law for the interception or diversion of any underground percolating waters consequent upon such use of his own property." *Wheatley* v. *Baugh*, 25 Pa. 528, 64 Am. Dec. 721, citing *Ellis* v. *Duncan*, 21 Barb. (N. Y.) 230; *Delhi* v. *Youmans*, 45 N. Y. 362, 6 Am. Rep. 100; *Acton* v. *Blundell*, 12 Mees. & W. 324; *Raustron* v. *Taylor*, 33 Eng. L. & Eq. Rep. 428; *Broadbent* v. *Ramsbothan*, 34 Eng. L. & Eq. Rep. 553; *Brown* v. *Illius*, 27 Conn. 84, 71 Am. Dec. 49; *Davis* v. *Spaulding*, 157 Mass. 431, 32 N. W. 650, 19 L. R. A. 102; *Frazier* v. *Brown*, 12 Ohio St. 294.

As to the diversion of subterranean, percolating waters, by owner of adjoining tract, the law in this State is considered in *Miller* v. *Black Rock Springs Imp. Co.*, 99 Va. 747, 754, 40 S. E. 27, 86 Am. St. Rep. 924, and in *Honinger* v. *McGinnis*, 131 Va. 76, 108 S. E. 671.

In the *Black Rock Case*, at page 754 (40 S. E. 29), the court, quoting from Cooley on Torts (2d ed.) 689, declared the law in these words: "If one by excavation on his own land draws off the subterranean waters from the lands of his neighbor to the prejudice of the latter, no action will lie for the consequent damages.

"It may be considered settled law that if the well dug by one man ruins the well or spring of his neighbor by drawing off its water, it is *damnum adsque injuria.*"

And quoting from Gould on Waters (3d ed.), section 280, at page 755, the court says further:

"The landowner may make a ditch to drain his land or dig a well thereon, or open and work a quarry upon or otherwise change its natural condition, although by

so doing he interrupts the underground sources of a spring on his neighbor's land.

[6] "Waters appearing not to be supplied by a definite flowing stream (flowing in a certain direction by a regular channel with sides and having a substantial existence) are presumed to be the result of the ordinary percolations of water in the soil.

"It has been well settled by a long and unbroken line of authority that a proprietor of land may dig a well upon his own premises, mine, drain it, or in any wise change its natural condition, even though in so doing he may intercept or impede the natural underground percolations, the sources of supply of his neighbor's spring of water." See what is asid of this case in *Clinchfield Coal Corp.* v. *Compton,* decided at this term, *ante,* page 437, 139 S. E. 308.

[7] We find nothing in *Stonegap Coal Co.* v. *Hamilton,* 119 Va. 271, 89 S. E. 305, Ann. Cas. 1917E, 60, so confidently relied upon by the plaintiff, which is in conflict with the law as laid down in the *Black Rock Case, supra.* Besides, the *Stonegap Case* is easily distinguishable from the instant case. In the *Stonegap Case* the plaintiff was seeking damages resulting from the unlawful act of the defendant in failing, while mining coal under the Dodson tract, to leave sufficient pillars or other supports to prevent. the strata overlying the coal from breaking and falling and thereby causing the spring on the Dodson tract to be drained and go dry. Hamilton owned the surface and the coal company owned the coal on the Dodson tract. In the instant case, the defendant coal corporation owned both the surface and the coal on the land upon which it was mining, and the plaintiff is asking for damages occasioned by the action of the defendant in failing to leave sufficient pillars and props to support the roof of

the mines on its own land, thereby causing the land above the coal to crack, break and fall into the mine and intercept and divert the underground percolating waters which supplied the well on an adjoining tract, the surface of which was owned by the plaintiff's intestate, and thereby cause the well to dry up.

In the *Stonegap Case*, the plaintiff had a right to subjacent support, but in the instant case, the defendant being the owner of the surface and the coal beneath it, the plaintiff was not entitled to subjacent support under the defendant's land.

The court, in the *Stonegap Case*, approved instruction No. 5, offered by the plaintiff, as follows: "The court instructs the jury that the defendant had the right to mine and remove the coal under the tract of land in question known as the J. A. Dodson tract, and to take down such of the roof over said coal as was reasonably necessary in mining coal and removing same, and if in so doing it tapped the source of the spring on said tract of land and drained it, the defendant is not liable. But the jury are further instructed that it was the duty of the defendant in mining said coal to leave sufficient props, pillars or other means of support to prevent the overlying strata from breaking and falling; and if they believe that the defendant failed to leave sufficient props, pillars or other means of support for said overlying strata and that as a result of such failure it was cracked and broken and the spring on the said land thereby drained and destroyed, they should find for the plaintiff such damages as he sustained so that the same shall not exceed five thousand dollars."

The action of the court in granting and refusing instructions was in accord with the views herein expressed.

The following instructions, given for the defendant, were free from error, to-wit:

[8] "The court instructs the jury that the burden is on the plaintiff to show by a preponderance of the evidence that the defendant unlawfully and negligently caused the drainage or failure of said well by the wrongful or unlawful failure to leave sufficient supports under plaintiff's two acre tract in which said well was located, and if it appears from the evidence that the coal has not been removed from the said two acre tract on which the said well is located, then no recovery can be had in this case.

[9] "The court instructs the jury that if you believe from the evidence that plaintiff's well went dry on account of the mining and removal of coal by defendant or by reason of cracks on an adjacent tract of land, then there can be no recovery in this case.

[10] "The court instructs the jury that the defendant in the removal of its coal had the right under the law to drain underground or subterranean waters, streams, pools, or percolations in said soil over or around its seams of coal, and if in so removing its coal it drained the water in said well, it is not responsible or liable in damages to the plaintiff for the loss of his well."

For the foregoing reasons, the judgment will be affirmed.

*Affirmed.*