165 So. 764

## SLOSS–SHEFFIELD STEEL & IRON CO.
### et al. v. WILKES et al.
### 6 Div. 763.

Supreme Court of Alabama.
Feb. 13, 1936.

Bradley, Baldwin, All & White, of Birmingham, and Huey, Welch & Stone, of Bessemer, for appellants.

Howard H. Sullinger and McEniry & McEniry, all of Bessemer, for appellees.

**FOSTER, Justice.**

This is an action for damages to plaintiff's land which is alleged to adjoin that of defendant Sloss-Sheffield Steel & Iron Company, and claimed to be due to the drainage of surface water out of the springs and wells on plaintiff's land produced by a falling in of the roofs of two closely connected mines of said defendant, also causing cracks and crevices to occur on the surface of plaintiff's land in places.

One Immler was sued with the company, as well as another employee. A judgment was rendered against the company and Immler, but not the other.

The first assignment of error argued is the judgment overruling the demurrer of Immler to count 1 of the complaint. That count alleges, without now referring to a coemployee, that he was the superintendent of the company in charge of the supervision and maintenance and operations of the ore mines of the company; that the damage was caused by the negligence of Immler then and there employed by the company in charge of the care and maintenance of said ore mines, and while acting in the line and scope of his employment negligently failed to prop or support, or cause to be propped or supported, the roof of said ore mine.

We have here stated enough of the substance of count 1 to present the point urged. It is that there must be a joint liability with the company; that the company is not liable unless Immler would be so if there had been no relation of master and servant between him and the company; that outside of such relation there was no duty due by him to plaintiff, but that his duty of omission was due to the company; and that a third party cannot hold the servant personally liable for omissions which he owes only to his master, although there is such a duty which is thereby breached. The failure to prop is alleged to be the negligence of Immler, as superintendent in charge of the supervision and maintenance of the mines.

In some jurisdictions it is said that the servant does not owe to a third person a duty not to omit to do an act, but only not to do the act in a negligent manner. 39 C.J. 1311.

But it seems to us that it depends upon whether due care in the performance of his duties makes it necessary to do the act which is omitted. If he omits to enter upon the performance of his duties, such omission is not a negligent performance; but if he does enter upon the service, negligent performance may result from omit-

ting to do what ought to be done as well as performing his duties in an improper manner.

Our cases have thus considered the question. In Wright v. McCord, 205 Ala. 122, 88 So. 150, the principle is carefully analyzed, following Mayer v. Thompson-Hutchison Bldg. Co., 104 Ala. 611, 16 So. 620, 28 L.R.A. 433, 53 Am.St.Rep. 88. In Hilburn v. McKinney, 204 Ala. 158, 85 So. 496, a person was sued, alleging that he was the operator of a public ferry for Marshall county, in which he used an unsafe boat, in that, there was no gate or barrier to prevent animals from stepping off. The question, of course, was whether he was liable irrespective of his duty to the county. Was it his duty not to use a boat so equipped which had been thus furnished him by his master? It was not alleged that his duty was to provide a safe boat, or not to operate one which was not safe. His operation as thus set up was not a negligent performance of his duty, not to say that it would not have been had it been his duty to make the boat as well as its operation duly safe.

[4] Here it is not alleged that Immler omitted to enter upon the discharge of his duties as superintendent, but count 1 alleges that being employed in the capacity of superintendent in charge of supervision and maintenance of the mines, he negligently failed to prop the roof while acting in the line and scope of such employment.

The charge, therefore, is a negligent performance of his duties, not a failure altogether to do them. For the former, third persons proximately injured may maintain a joint action against them both; for the latter, it is the duty to the master only which is breached.

We cannot, therefore, sustain appellant in respect to his argument on the first assignment of error.

[5] Assignment of demurrer lettered "g" is that Stella Suther owned no part of the cause of action at the time the suit was filed; that means, of course, as disclosed by the complaint. It alleges that "Stella Suther was the owner of a certain indebtedness in the principal sum of $5300.00, secured by a mortgage on the one-half undivided interest then and there owned by the plaintiff J. W. Wilkes in and to the surface rights in said land; and that thereafter, on, to wit, November 16, 1932, the said plaintiff Stella Suther foreclosed said mortgage in strict accordance with the terms thereof and at said sale she bid and became the purchaser thereof for the sum of $7,880.50." It does not allege that there was a deficiency. But the presumption is against the pleader, that there was no deficiency. Moreover, such would be the inference, the contrary not being stated, since it alleges that the principal debt was $5,300, and the purchase price at foreclosure sale was $7,880.50, bid by her.

The damage to the land is alleged to have occurred on August 28, 1932, though the roof falls producing the damage are alleged to have occurred on May 4 and June 15, 1932, respectively. The mortgage is alleged to have been foreclosed November 16, 1932, and the suit was filed July 31, 1933.

So that the mortgage was foreclosed after the damage occurred, and before the suit was filed, and by the foreclosure sale the entire mortgage debt was collected.

[6] It has frequently been held that a mortgagee has a right of action against a third party for damages to the real property *which impairs his security.* Mathews v. Silsby Bros., 198 Iowa, 1392, 201 N.W. 94, 37 A.L.R. 1120; 13 Am.St.Rep. 154; 41 C.J. 652.

[7, 8] J. W. Wilkes, the mortgagor, is also made a party plaintiff. The mortgagor and mortgagee may unite in a suit for injuring mortgaged property, when the mortgagor is in possession. Southern R. Co. v. Chambless, 10 Ala.App. 326, 65 So. 417. After foreclosure the relation of mortgagor and mortgagee does not exist.

[9-11] When damage occurs before foreclosure, the right of action by the mortgagee whatever it may be, or the nature of the action, is only for the recovery of an amount not exceeding the mortgage debt. The right of action is collateral to the debt, and as security for it. The mortgagee may pursue any course he pleases to collect the debt, whether it be a suit for a personal judgment against the debtor, or for damages against one who has wrongfully converted the mortgaged property, or otherwise destroyed his rights in it, or for a foreclosure. And he may do them all at the same time. But when he once collects his debt, by any one of those proceedings, or by a voluntary payment of it, he cannot pursue any other remedy. They are all but means to accomplish one purpose, and when that is accomplished, all the

remedies, not used in so doing, are terminated.

■ When the alleged damages to the land occurred, plaintiff Suther had only a mortgage to secure a debt. The complaint shows that the debt was paid before this suit was begun. If she recovers, she collects her debt twice. The right to sue before foreclosure is in the category as would be a claim for an insurance loss occurring before foreclosure. We have held that such a claim by a mortgagee ceases when foreclosure thereafter occurring, the property is sold for enough to satisfy the debt, though the mortgagee becomes the purchaser. Ætna Ins. Co. v. Baldwin County B. & L. Ass'n, ante, p. 102, 163 So. 604.

Construing the complaint, as we must, to mean that the mortgage debt was satisfied by the foreclosure, and left no deficiency, it shows that plaintiff Suther had no right to join in this action.

The situation is different when there is a deficiency after foreclosure, or when by contract with the mortgagor, the claim is taken by the mortgagee in part payment of the debt. 13 Am.St.Rep. 154; Planter's Bank v. Lummus Cotton Gin Co., 132 S.C. 16, 128 S.E. 876, 41 A.L.R. 592.

The demurrer, ground letter s, raises the point that the plaintiff Nannie V. Davis acquired no interest in this cause of action by the transfer to her after the damage was done. Also in other grounds that she had no interest in the land at the time the cause of action arose.

The complaint alleges that on July 28, 1933, Walter R. Brown and wife conveyed to her (Nannie V. Davis) his one-half interest in the land together with his interest in the claim sued on. That was three days before this suit was filed, long after the cause of action arose. Walter R. Brown was alleged (in the complaint before it was amended) to have owned an undivided half interest with J. W. Wilkes as the owner of the other half at the time the cause of action arose. By amendment, filed June 11, 1934, this was changed so as to aver that J. W. Wilkes and Nannie V. Davis were the joint and equal owners in fee of the surface rights in the land on the alleged date of the accrual of the cause of action, August 28, 1932. But it retained the averment that Walter R. Brown and wife conveyed their one-half undivided interest in the surface rights of the land and claims for damages to it.

■ On demurrer to such a complaint, the question is not raised as to whether her possession, claiming joint ownership under a parol gift, is sufficient to support an action of this sort. In trespass the title is not triable, but possession under claim of ownership is ordinarily sufficient. Section 5661, Code; Buck v. Louisville & N. R. Co., 159 Ala. 305, 48 So. 699; Sadler v. Alabama G. S. R. Co., 204 Ala. 155, 85 So. 380; Kay v. Adams, 223 Ala. 33, 134 So. 628. The same principle applies when the action is in case for injuries to real property. 11 C.J. 14.

■ Our problem for the moment is in construing the complaint which at one time alleges her ownership in fee on August 28, 1932, and then alleges that her deed was executed on July 28, 1933. It is a question of construing those terms which look like they are inconsistent. A complaint should not leave such an equivocal status. She cannot maintain this suit in her own name under the deed of the land nor the assignment of the claim, made after it accrued. Southern R. Co. v. Stonewall Ins. Co., 177 Ala. 327, 58 So. 313; Parnell v. Southern R. Co., 199 Ala. 470, 74 So. 437; Phillips v. Malone, 223 Ala. 381, 136 So. 793; Commercial Casualty Ins. Co. v. Isbell National Bank, 223 Ala. 48, 134 So. 810. And it is uncertain whether she is claiming under an alleged ownership of an interest in the land and possession on August 28, 1932, or under an assignment by virtue of the deed dated July 28, 1933. This will be made clear on another trial.

■ But appellant insists that it is due the affirmative charge (assignment No. 17), for the failure to prove the averment of ownership in fee on August 28th, since plaintiff Davis cannot maintain the suit on the basis of the assignment of the claim after it accrued. The evidence tends to show that Brown gave his interest to his daughter Nannie V. Davis by parol and put her in possession, and she was in possession when this claim accrued, and later he made a deed and an assignment of the claim to her.

We have shown that an issue of the legal title is not proper in this action. But since the complaint alleged such ownership, there ought to be some evidence of its prima facie existence. "As to an intruder, or trespasser, or as to one who does not show a better right, possession of lands * * * is prima facie evidence of title, and will support ejectment." Dothard v.

Denson, 72 Ala. 541; Tapia v. Williams, 172 Ala. 18, 54 So. 613; Dodge v. Irvington L. Co., 156 Ala. 91, 48 So. 383, 22 L. R.A.(N.S.) 1100. Such possession is therefore sufficient to show prima facie ownership such as is alleged in this complaint as against one who causes an injury to the land and shows no claim of right to it. Towaliga Falls Power Co. v. Washington, 163 Ga. 397, 71 S.E. 731.

We do not think the defendant was due the affirmative charge on account of that contention.

Appellants also contend that it is due them because they did not owe the plaintiffs, as adjoining landowners, the duty to use ordinary care not to drain off the percolating waters in their own land, even though it may damage plaintiffs' land by diminishing the amount of their water supply fed by percolation; that, since plaintiffs do not own the surface rights in the land in which appellants operated, appellants may so conduct their operations, either in the manner of their use or neglect, as they choose, without liability to plaintiffs for drawing off percolating waters.

This was the English or common-law rule, by which a landowner has the absolute right to collect subterranean percolations, even if he thereby lessened or destroyed the source of supply of wells or springs on adjoining premises, and that he may cut drains or may mine or quarry, though in so doing he interferes with the supply of water produced by percolations to his neighbor, and that the quantity taken by him was immaterial, even to the extent of wasting it to the point of exhaustion. This rule was followed in nearly all of the early and in a number of later American cases. 27 R.C.L. 1172, note 3, 1173; 67 C.J. 837.

But this early rule of the common law has given way to the doctrine of "reasonable use," by which the landowner is said to have the right only to a reasonable and beneficial use of the waters upon the land or its percolations or to some useful purpose connected with his occupation and enjoyment. The "reasonable use" theory does not prevent the proper consumption of such waters in agriculture, manufacturing, irrigation, or otherwise, nor the development of the land for mining and the like, although the underground waters of neighboring properties may be thus interfered with or diverted. He may consume it, but he must not waste it to the injury of others. He may pump or draw or drain such waters without liability to his neighboring landowners, when it is proper for the natural and legitimate use or improvement of his own land, but not in an unreasonable manner to force and increase the flow to divert them to some use disconnected with such improvement and enjoyment whereby the flow of waters or their percolation under the lands of others are destroyed or diminished. We have here stated the substance of a part of an exhaustive treatment of the subject in 27 R.C.L. pp. 1171–1178, and in 67 C.J. pp. 837–841.

Emphasizing and adopting this principle of "reasonable use," this court, in dealing with surface rights in the same land in which mine operations occur, has asserted the rule to be that a "miner is not liable for any incidental damages necessarily occasioned by the ordinary and careful operation of his mines, not injurious to the surface, such as the loss of springs and wells fed by subterranean streams." Corona Coal Co. v. Thomas, 212 Ala. 56, 57, 101 So. 673, 675; Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am.St.Rep. 368; Bagley v. Republic I. & S. Co., 193 Ala. 219, 69 So 17.

In the case of Stonegap Colliery Co. v. Hamilton, 119 Va. 271, 89 S.E. 305, Ann. Cas.1917E, 60, coal was mined under a surface owned by plaintiff. The claim was that defendant failed to leave sufficient props; that the roof fell causing springs on the surface to drain and go dry. The court held that defendants could have taken down the coal, such as was reasonably necessary in mining and removing it, and if in so doing it tapped the source of a spring and drained it, defendant was not liable. But that if defendant failed to provide sufficient props and as a result the roof cracked and broke and drained the spring, plaintiff should have his damage against him. But in Couch v. Clinchfield Coal Corporation, 148 Va. 455, 139 S.E. 314, the same court refused to apply the rule of such liability to an adjacent landowner. But the opinion is largely devoted to citing cases and authorities where the owner uses, but does not waste, such water by negligence or willful conduct. And the same court in Clinchfield Coal Corporation v. Compton, 148 Va. 437, 139 S.E. 308, 55 A.L.R. 1376, recognized and quoted the principles we have stated in 27 R.C.L., supra, and held that there was no liability

when the mine owner caused the loss of water as an incident to its ordinary uses; but that there was liability to his neighbor for its waste or misuse. Note, 55 A.L.R. 1425 et seq.

We cannot well see the consistency of those cases. The latter is where it was alleged that some of plaintiff's land overlaid defendant's where the mining was done, and in the ninth headnote where some did not; but the same rules were applied adopting the "reasonable use" theory, quoting from Meeker v. City of East Orange, 77 N.J.Law, 623, 74 A. 379, 25 L.R.A.(N.S.) 465, 134 Am.St.Rep. 798, to the effect that the rule prevents the withdrawal of such waters for distribution when thereby the adjacent landowner is interfered with in respect to his wells and springs. But the case was decided on the theory that the company was making a legitimate use of its land. It referred to the case of Miller v. Black Rock Springs Imp. Co., 99 Va. 747, 749, 40 S.E. 27, 86 Am.St.Rep. 924, where it was said that the interception of water was for domestic purposes, but it adopted the English rule, although there was no liability under the American rule of "reasonable use." And in the Compton Case, supra, it is said that if the question comes before the court, it would be free to consider it de novo. It also referred to the Stonegap Case, supra, with apparent approval. The Couch Case, supra, by the same court, with a different judge writing, does not discuss the subject as in the Compton Case, supra, but holds that the mining company is not liable for draining adjoining lands by falling of a roof due to insufficient props. The case of West Kentucky Coal Co. v. Dilback, 219 Ky. 783, 294 S.W. 478, 479, sheds no light on the question.

We think the American principle of "reasonable use" is in accord with our cases and conception of what is the logic of the situation.

If defendant is conducting any sort of operations to which its land is adapted in an ordinary and careful manner, and as a consequence percolating water is drained, affecting the surface owner's water supply, either of that or adjoining land, no liability for his damage exists. But if the waters are drained without a reasonable need to do so, or are willfully or negligently wasted in such operation in a way and manner as that it should have been anticipated to occur, and as a proximate result the damage accrued to the surface owners so affected, including adjoining landowners, there is an actionable claim, as held by what we think are the best considered cases.

And although there may be an absolute duty to the surface owners of the same land in which mining operations are conducted not to cause falls and sinks or cracks in the surface, such duty arises as an incident to that of subjacent support (Corona Coal Co. v. Thomas, supra), which does not exist as to adjoining surface landowners. As to them there is no difference between the duty to avoid surface disturbances and that to avoid drainage of percolating water, since the duty of subjacent support is not existent and so long as lateral support is not interfered with. Note, 55 A.L.R. 1420.

But this case is not wholly determined by the duty of the company, but that of its named employees, provided, of course, if no duty existed as to defendant, none existed in respect to the conduct of the employees thus omitted. There may have been a duty to plaintiffs by the company to have natural supports reasonably thought to be sufficient to hold up the roofs so as to prevent such extensive falls, and consequential damages.

If that was not done, the only effect of such failure in this suit related to the use of due care by defendants' servants named in the complaint.

But before treating that subject, we will discuss another which is urged by appellants, and which appears to us to be well taken. It is that since the allegation is made that the negligence of both Immler and Armstrong caused the damage, it is a variance, unless the proof shows that they were both negligent. This contention was called to the attention of the court by special charges (page 28, Transcript, not numbered).

When a tort is committed by two persons acting jointly, the claim against them is joint and several. It was not necessary to enact section 5720, Code, to justify a recovery against one only in a suit against them both. Lovelace v. Miller, 150 Ala. 422, 43 So. 734, 11 L.R.A.(N.S.) 670, 14 Ann.Cas. 1139; Milner v. Milner, 101 Ala. 599, 14 So. 373; City of Birmingham v. Hawkins, 196 Ala. 127, 72 So. 25;

Smith v. Gayle, 58 Ala. 600; Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534.

But when a complaint alleges the existence of a joint cause of action against two defendants, when it is not also shown to be several, and the proof does not show a joint cause, but one that is several only, or two distinct causes, there is a variance and no recovery is available on that state of the pleading against any one or more notwithstanding section 5720, Code. Redmond & Co. v. Louisville & N. R. Co., 154 Ala. 311, 45 So. 649; Central of Georgia R. Co. v. Camp Hill Trading Co., 208 Ala. 315, 94 So. 350; Handley v. Shaffer, 177 Ala. 636 (17), 59 So. 286.

Likewise in tort actions where the complaint alleges a contract relation between all the defendants (which gave occasion for the tort), but which was not sustained by the evidence as to one defendant, there was said to be a fatal variance which entitled all the defendants to the general charge. Hackney v. Perry, 152 Ala. 626, 44 So. 1029.

In a case where two corporations were sued jointly in tort, alleging that plaintiff's intestate was in the service of both defendants when he received his injuries, and the proof disclosed that he was in the service of only one of them, there was held to be a fatal variance, and each defendant was held to be entitled to the affirmative charge. Northern Alabama R. Co. v. Mansell, 138 Ala. 548, 36 So. 459; Dean v. East Tennessee V. & G. Ry. Co., 98 Ala. 586, 13 So. 489.

In a case where several defendants are alleged to have been operating a railroad when the personal wrong was done plaintiff, a tort action was presented, and the evidence showed that one of them was not doing so, there was held to be a variance, and no recovery was allowed against the others. McGhee v. Drisdale, 111 Ala. 597, 20 So. 391.

Those cases assert that they are not opposed to the doctrine which ordinarily obtains in tort actions, permitting a recovery against some but not all of the defendants. Northern Alabama R. Co. v. Mansell, supra, 138 Ala. 548, at page 564, 36 So. 459.

This court was dealing with the exact situation presented in the instant case in Joubert & Goslin Machine & Foundry Co. v. Atchley, 218 Ala. 105, 117 So. 640; but held that there was no variance because both the alleged agents were so in fact and caused the wrong as alleged. The three counts 1, A, and B which were submitted to the jury made the liability of the Sloss Company depend upon the negligence of both Immler and Armstrong as servants or agents of that company. The court refused charges that both must be negligent as alleged to fix liability on the Sloss Company. There was here a fatal variance in line with the cases we have cited, since the court found that Armstrong was not a party to the negligence, and the court should have given the charges requiring the negligence of both to justify a recovery against the Sloss Company.

And, of course, if Immler was not culpably negligent, there was no liability, in the absence of the negligence of Armstrong. The court instructed the jury that Armstrong was not so negligent, as to which no complaint is made. At the two places where the falls occurred, operations had ceased for fifteen or twenty years. When Immler first became superintendent, they had long since—perhaps ten or twelve years—been worked and abandoned, and not used for any purpose. When the company ceased to operate in those entries, they left pillars of the ore as supports for the roof, but no artificial supports. Whether that was done in a proper manner is only indirectly here material, because Immler had no connection with it. When Immler came into responsibility, the question of his duty in this connection related at most to the need and practical effect of *artificial supports,* and did not concern the sufficiency of the pillars of ore left by the company as supports, except as they should have been supplemented in some practical manner to satisfy the duty of ordinary care.

The evidence is that no such supplemental supports then added would have materially benefited the situation, or were practical, or were so added by any of the companies mining such ore in the territory in abandoned entries. This was about nine hundred feet under ground. The evidence is that no timbers could have held such a weight. The place had been mined and abandoned some ten or twelve years before he (Immler) went there, and no serious roof falls had occurred, and not until fifteen or twenty years after they were abandoned.

Since the question is not here necessary to decide, we do not here consider the na-

520

ture of the duty of the company, irrespective of that of Immler, in respect to the sufficiency of the supports as left when the operations terminated, nor its duty. if any, to continue for fifteen or twenty years to use care in that regard as affecting the surface rights of plaintiffs. It was shown that falls of the roof in such mines, when so abandoned, are not unusual, but not so extensive as those which are described in this suit. One of them embraced an area of about eight acres and the other twenty.

The evidence largely related to the method of the company in its mining operations showing the character and size of pillars which it left. This could have no bearing on the case, except as it affected Immler's duty, if he came to the problem of whether to supplement those supports with timbers, and whether timber supports would have prevented those falls or lessened their effect on the percolating waters above the mines. Such a probability is contrary to the evidence of the expert witnesses and general experience in such operations, and we think it is not fairly inferable from the circumstances.

Moreover, on the question of whether it was Immler's province as mine superintendent to change a policy of the company in respect to adding timbered supports to long-abandoned entries, the evidence is not at all clear. It was shown that such was not the policy of the company, nor any of the other such companies in the district. It is not to be inferred that Immler was vested with the authority to change that policy. He was certainly not personally responsible to plaintiffs for failing to do something not within the scope of his duties. It does not appear that it was his duty to inspect the abandoned entries and determine whether the ore pillars, which had been left, should be supplemented by timber supports. But the evidence seems to be clear that such timbers would not have been effectual.

We think the affirmative charge should have been given for defendant.

It does not seem to be necessary to discuss the many other questions argued in the briefs, since the material questions of law, as we view them, have been here treated.

Reversed and remanded.

GARDNER, BOULDIN, and KNIGHT, JJ., concur.