## Richmond

## WTAR Radio-TV Corporation, Et Al. v. City Council of the City of Virginia Beach, Et Al.

April 23, 1976.

Record No. 750787.

Present, All the Justices.

*Conrad M. Shumadine; David Y. Faggert (Barry W. Hunter; Kaufman, Oberndorfer & Spainhour,* on briefs), for appellants.

*Charles Sallé, Assistant City Attorney (J. Dale Bimson, City Attorney; Arthur Bergman, Assistant City Attorney,* on brief), for appellee.

POFF, J., delivered the opinion of the court.

WTAR Radio-TV Corporation and Joseph Jay Moore, III, (petitioners) filed original and amended petitions against City Council of the City of Virginia Beach and its individual members (collectively, Council) alleging violations of the Virginia Freedom of Information Act, Code §§ 2.1-340, *et seq.* (Repl. Vol. 1973; Cum. Supp. 1975)* (the Act) and seeking injunctive relief. The chancellor sustained Council's demurrers and we must decide whether the petitions stated a cause of action.

Petitioners alleged that Council adopted a resolution at its regular meeting on December 2, 1974, announcing a closed meeting on December 9, 1974; that the resolution stated that the meeting was to be held "for the purpose of discussing items permitted for discussion under Section 2.1-344, subparagraph 2 and 6 of the . . . Act"; that

---

* Insofar as pertinent to this appeal, the Act provides:

"§ 2.1-343. **Meetings to be public except as otherwise provided; minutes; information as to time and place.**—Except as otherwise specifically provided by law and except as provided in §§ 2.1-344 and 2.1-345, all meetings shall be public meetings. Minutes shall be recorded at all public meetings. Information as to the time and place of each meeting shall be furnished to any citizen of this State who requests such information.

"§ 2.1-344. **Executive or closed meetings.**—(a) Executive or closed meetings may be held only for the following purposes:

. . .

"(6) Consultation with legal counsel and briefings by staff members, consultants or attorneys, pertaining to pending litigation, or legal matters within the jurisdiction of the public body, including legal documents.

"(b) No meeting shall become an executive or closed meeting unless there shall have been recorded in open meeting an affirmative vote to that effect by the public body holding such meeting, which motion shall state specifically the purpose or purposes hereinabove set forth in this section which are to be the subject of such meeting.

"(c) No resolution, ordinance, rule, contract, regulation or motion adopted, passed or agreed to in an executive or closed meeting shall become effective unless such public body, following such meeting, reconvenes in open meeting and takes a vote of the membership on such resolution, ordinance, rule, contract, regulation or motion.

. . .

"§ 2.1-346. **Proceedings for enforcement of chapter.**—Any person denied the rights and privileges conferred by this chapter may proceed to enforce such rights and privileges by petition for mandamus or injunction, supported by an affidavit showing good cause. . . ."

the resolution did "not state specifically the purpose or purposes" to be discussed; that petitioners learned that the subject scheduled for discussion was a report compiled by the Virginia Beach Neptune Festival, a private organization, requesting an appropriation of public funds; that the legality of the request did not constitute a "legal matter" within the meaning of Code § 2.1-344(6) (Cum. Supp. 1975) and the subject was not otherwise privileged for secret discussion; that Council, over petitioners' protest, discussed that subject in executive session at the December 9, 1974, meeting; and that, at another closed meeting on January 13, 1975, Council discussed six items listed on the agenda, four of which "were inappropriate for an executive session", and another item not listed on the agenda.

Petitioners asked the chancellor to hold that the discussion of these matters in executive session constituted violations of the Act, and to "enter a permanent injunction . . . enjoining the City Council . . . from holding executive or closed meetings except for the purposes set forth in Section 2.1-344(a), . . . from holding executive or closed meetings unless and until the City Council shall specifically state the purpose or purposes . . . with particularity and . . . from discussing any items not contemplated at the time the resolution was passed. . . ."

The dispositive question is whether petitioners' allegations of previously consummated violations of the Act were sufficient to support the issuance of the requested injunction restraining future violations.

■ Under Code § 2.1-346 (Repl. Vol. 1973), the filing of a verified petition alleging denial of a protected right vests the chancellor with jurisdiction to hear the cause and "to enforce" the right by granting injunctive relief. Contrary to Council's contention, the petition need not contain an allegation of "irreparable injury". *See Town of Palm Beach v. Gradison*, 296 So.2d 473 (Fla. 1974). The Act does not, however, expressly provide what other allegations are necessary or what restraints may be imposed to enforce the right denied. It provides only that the petition for injunction must be "supported by an affidavit showing good cause".

■ Historically, the "good cause" to be served by injunctions, whether mandatory or prohibitory, has been the prevention of future wrongs. The function of the mandatory injunction is to undo an existing wrongful condition; but its use is justified only when it appears that, if it is not applied, the wrongful condition is likely to continue. The function of the prohibitory injunction is, not to repair or penalize a wrong previously consummated, but either to maintain the *status*

*quo,* to restrain the continued commission of an on-going wrong, or to prevent the future commission of an anticipated wrong.

Whether an injunction, an extraordinary remedy, should be employed to prevent the future commission of an anticipated wrong depends, in each case, upon the nature of the wrong and upon the likelihood that the wrong will be committed. When there is reasonable cause to believe that the wrong is one that would cause irreparable injury and the wrong is actually threatened or apprehended with reasonable probability, there is good cause for entry of a prohibitory injunction.

In respect to good cause here, the irreparable injury inquiry has, as we have said, been mooted by the Act, and an actual threat of a future violation has not been alleged. The remaining question is whether, from the facts that were alleged, such a violation can be apprehended with reasonable probability.

■ Petitioners alleged that Council had committed several violations of the Act. For purposes of the demurrer, these allegations must be treated as true. A previous course of conduct may raise an inference that such conduct will be repeated. But a mere inference does not support an apprehension with reasonable probability such as would justify imposition of a judicial sanction against a legislative body.

The law never presumes that a man will violate the law. Rather, the ancient presumption is that every man will obey the law. That presumption holds even when one accused of crime has been convicted of other crimes, and it prevails until rebutted by proof beyond a reasonable doubt. While charges of civil violations entail a lesser evidentiary burden, a similar presumption follows the public official into his office. Sometimes, regrettably, the public trust is betrayed and the office dishonored. But the presumption itself survives, as it must, for our system of government could hardly function if the law were to presume that all public officials are scoundrels deserving continuing supervision by judicial overseers.

■ We hold that the verified petitions failed to allege facts sufficient to show good cause for the injunctive relief requested and that the demurrers were properly sustained.

We are mindful of the high purpose the Act seeks to promote, and we have carefully considered what petitioners call "the futility of having a Freedom of Information Act if there is no method of forcing public bodies to comply with it." Our holding does not render the Act unenforceable; the injunctive relief it authorizes remains available

when a cause is properly pleaded. Whether the enforcement provisions of the Act should be amended, and if so, in what manner, are matters of public policy solely within the jurisdiction of the General Assembly.

*Affirmed.*