GERALD LARGE, ET AL.

V.

CLINCHFIELD COAL COMPANY

Record No. 881163

CLINCHFIELD COAL COMPANY

V.

GERALD LARGE, ET AL.

Record No. 890009

January 12, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and Gordon, Retired Justice

*Buddy H. Wallen; Gerald L. Gray* for appellants. (Record No. 881163)

*Stephen M. Hodges; Karl K. Kindig (Wade W. Massie; Penn, Stuart, Eskridge & Jones*, on brief), for appellee. (Record No. 881163)

*Stephen M. Hodges; Karl K. Kindig (Wade W. Massie; Penn, Stuart, Eskridge & Jones*, on briefs), for apellant. (Record No. 890009)

*Buddy H. Wallen; Gerald L. Gray* for appellees. (Record No. 890009)

JUSTICE WHITING delivered the opinion of the Court.

In these two appeals, we decide whether the owners of the surface of a tract of real property are entitled to prohibit "longwall" coal mining. This coal mining method involves the removal of all the coal in a seam without leaving any supporting pillars of coal and results in a subsidence in the land surface.

Gerald and Betty Large own 81 acres of unimproved and uninhabited timberland in a mountainous area of Dickenson County. Clinchfield Coal Company (Clinchfield) owns the coal under the

81 acres as the successor in title to parties who had acquired the coal from the Larges's predecessors in title by deeds dated February 28, 1887, and March 3, 1887.

On June 10, 1988, alleging that Clinchfield's longwall mining would cause surface subsidence and consequent damage, the Larges sought a declaratory judgment and injunctive relief prohibiting Clinchfield from mining under their land by that method. Although the trial court found, after hearing evidence, that Clinchfield's longwall mining would cause a subsidence in the surface, it also found that the evidence did not establish that such mining would damage the surface to "any appreciable degree," that entry of an injunction would cause great economic loss to Clinchfield and the community, and that the equities favored Clinchfield. Nevertheless, the court entered a temporary injunction order on July 25, 1988, because "balancing of the equities does not come into play due to the nature of the absolute right of subjacent support."

On July 29, 1988, upon the Larges's failure to post the bond required for the temporary injunction, the trial court dissolved the injunction and denied their request for a permanent injunction. However, on October 7, 1988, after the parties advised the court that they desired to present no further evidence, the court entered a final decree denying Clinchfield the right to utilize longwall mining under the Larges's land. Both parties appeal the findings adverse to them.

Because the evidence of record is sufficient to support the trial court's finding that there would not be any appreciable damage to the surface resulting from Clinchfield's longwall mining, we conclude that the trial court erred in prohibiting Clinchfield from utilizing that mining method.

Clinchfield utilizes the longwall mining process under the Larges's property and a number of properties adjacent to the Larges's and to one another. In longwall mining, Clinchfield removes all the coal from a seam in panels which are 600 to 700 feet wide and 3,000 to 5,000 feet long. Five such panels will extend across the subsurface of the Larges's property, under which the coal seams are five feet thick.

By the use of temporary shoring, Clinchfield sustains the mine roof, which enables it to extract all the coal from the seam. As the longwall mining equipment advances through the coal seam, the temporary shoring is removed from the mined area. The first 50-

75 feet of strata above the mined seam, the immediate roof, then "rubblizes" because of pressure from the strata above, and collapses into the excavated area. The next 50-75 feet of strata above the immediate roof, the intermediate roof, then fractures into large blocks, collapses on the immediate roof, and later reconsolidates under pressure from the main roof. The main roof begins 100 to 150 feet above the coal seam, and extends to the surface of the Larges's property, varying from 500 to 900 feet above. The main roof flexes or "bows" during the process but does not fracture. Therefore, there are no fractures or cracks in the surface. However, there is uniform subsidence in the form of a swale above the excavated area, with a maximum depth of approximately three feet.

Approximately 90 percent of the subsidence occurs within three months of mining, and the remaining 10 percent may occur within the subsequent year. There will be no damage to the timber or stream on the Larges's property, nor will the mining cause appreciable damage to a spring on the property.

■ We have never decided whether a surface owner's right to subjacent support is violated by mere surface subsidence. We have, however, noted that upon a grant of the subsurface mineral estate, the surface owner retains a right of subjacent support, *Stonegap C. Co.* v. *Hamilton*, 119 Va. 271, 289, 89 S.E. 305, 310 (1916),* which we described as "absolute." *Id.* at 288, 89 S.E. at 310.

■ The Larges contend that because their right is "absolute," they have a cause of action and a consequent right to an injunction upon *any* subsidence in the surface, even though there is no appreciable surface damage. They cite and we find no supporting cases. On the contrary, the "absolute" nature of the right to subjacent support merely implies strict liability for its violation. Restatement (Second) of Torts § 820 comment b (1977). Thus, a lack of negligence is no defense when an owner of subterranean minerals is sued by a surface owner for a violation of his right to subjacent support. *See Clinchfield Corp.* v. *Compton*, 148 Va. 437, 450, 139 S.E. 308, 312 (1927); *Stonegap C. Co.*, 119 Va. at 296, 89 S.E. at 312.

---

* Clinchfield does not contend that the Larges's predecessors in title expressly granted the right to mine by the longwall method, or that their predecessors expressly waived any claim for damages due to surface subsidence.

The Larges conceive of their right to subjacent support as being violated by *any* subsidence in the surface caused by the subterranean owner, irrespective of the lack of surface damage or diminution in use. We do not agree.

At law, a claim for a violation of subjacent support is implicitly premised upon a showing of appreciable damage to the surface estate or diminution in its use. *See Phipps* v. *Leftwich*, 216 Va. 706, 712, 222 S.E.2d 536, 540 (1976); *Stonegap C. Co.*, 119 Va. at 293, 89 S.E. at 311. Moreover, until a surface landowner establishes damage to his property, he has no cause of action. *Stone* v. *Ethan Allen, Inc.*, 232 Va. 365, 368, 350 S.E.2d 629, 631 (1986); *First Va. Bank-Colonial* v. *Baker*, 225 Va. 72, 82, 301 S.E.2d 8, 14 (1983). In equity, no prohibitory injunction against an anticipated wrong will issue unless "there is reasonable cause to believe that the wrong is one that would cause irreparable injury and the wrong is actually threatened or apprehended with reasonable probability. . . ." *WTAR Radio-TV* v. *Virginia Beach*, 216 Va. 892, 895, 223 S.E.2d 895, 898 (1976).

The Larges's right of subjacent support is similar to an adjoining property owner's right of lateral support. As we said in *Stevenson* v. *Wallace*, 68 Va. (27 Gratt.) 77 (1876):

Every person has a natural right, *ex jure naturae*, to support to his land from the adjacent and subjacent soil. . . . The right to subjacent support, it is said, was first determined in *Humphries* v. *Brogden*, 12 Q.B. 739, 64 Eng. Com. Law. R. 739, upon the ground that there were the same reasons for it that there were to maintain the right to lateral support which had been previously determined. Both rest upon the same foundation.

*Id.* at 86-87; *see also Stonegap C. Co.*, 119 Va. at 283-84, 89 S.E. at 309.

No cause of action for removal of lateral support arises without damage to the adjoining property. *See Chairman Highway* v. *Fletcher*, 153 Va. 43, 48, 149 S.E. 456, 458 (1929); *Couch* v. *Clinchfield Corp.*, 148 Va. 455, 460, 139 S.E. 314, 315 (1927). We see no reason to apply a different rule to a claim alleging removal of subjacent support, without damage to the surface property. Nor do we believe that the surface owners are entitled to a prohibitory injunction unless they establish that there is a reason-

able probability that irreparable harm will result from the removal of subjacent support.

Although they do not show physical damage to their property, any interference with its use, or anticipated irreparable harm, the Larges analogize their cause of action to that of a plaintiff who is entitled to enjoin continued trespasses across his property despite a lack of showing of physical damage to the property. This was the basis for the holding in *Clayborn v. Camilla, Etc., Coal Co.*, 128 Va. 383, 398-99, 105 S.E. 117, 122 (1920), upon which plaintiffs rely. Here, however, Clinchfield is not trespassing on the Larges's property.

Accordingly, the trial court erred in ruling that Clinchfield could no longer continue its longwall mining operation under the Larges's property and the trial court's judgment in that respect will be reversed, and final judgment will be entered for Clinchfield here. For this reason, and not the reason assigned by the trial court, the denial of the injunction will be affirmed.

Record No. 881163 - *Affirmed.*
Record No. 890009 - *Reversed and final judgment.*

JUSTICE RUSSELL, with whom JUSTICE STEPHENSON joins, dissenting.

In *Stonegap C. Co. v. Hamilton*, 119 Va. 271, 89 S.E. 305 (1916), we approved an instruction which told the jury that, where mineral rights have been conveyed to a party other than the owner of the surface, the surface "must be protected at all hazards," and that the surface "extends down to the very top of the underlying coal, including all strata over it, even slate and rock." *Id.* at 294, 89 S.E. at 312. We quoted, with approval, authority which stated, "[a] reservation of all minerals or of the right of mining must always respect the surface rights of support. . . . [A]n *absolute right to surface support* is not to be taken away by mere implication . . . . Therefore, a grant of minerals by the owner of the soil *does not give to the grantee the right to allow the surface to fall in.*" *Id.* at 288-89, 89 S.E. at 310. (Emphasis added.)

The majority makes no effort to overrule *Stonegap* and its progeny, and impliedly concedes that a surface owner's right of subjacent support continues to be, in Virginia, an absolute property right. Nevertheless, the majority opinion refuses to grant injunc-

tive relief to the surface owner, even where the evidence is undisputed that "longwall" mining will cause the surface to subside into five swales, each three feet deep, 600 to 700 feet wide, and 3,000 to 5,000 feet long, crossing the surface owner's property.

Recognizing that injunctive relief would be appropriate if "the wrong is one that would cause irreparable injury and the wrong is actually threatened or apprehended with reasonable probability," the majority thinks that those conditions have not been shown in this case. I must confess my inability to follow the majority's reasoning. The subsidence is surely "irreparable"; the coal company makes no showing of any intention to restore the land to its former condition after it has removed all the coal and departed. The surface owner's "apprehension" is surely based upon "reasonable probability"; the coal company frankly states its intention to remove all subjacent support as soon as it is permitted to do so. The only remaining basis for refusing injunctive relief can be the majority's implicit conclusion that the surface owner will suffer no "injury." But the destruction of an absolute property right is, in itself, an injury subject to injunctive relief.

> It is very true that a court of equity will not, as a general rule, interpose in the case of a mere naked trespass. There must be something more to call forth its interference. But where the act done or threatened to be done would be destructive of the substance of the estate, or if repeated acts of wrong are done or threatened to be done, or the injury is or would be irreparable, whenever, indeed, the remedy at law is or would be inadequate, a court of equity will put forth its restraining hand and enjoin the perpetration of the wrong and prevent the injury.

*Miller* v. *Wills*, 95 Va. 337, 339, 28 S.E. 337, 338 (1897) (citations omitted).

The foregoing principles are alone sufficient to warrant injunctive relief on the facts of this case. The majority opinion, however, goes further. It finds the evidence sufficient to support the trial court's finding that the apprehended subsidence would not damage the surface "to any appreciable degree." That finding was in turn based upon the coal company's expert testimony to that effect. Any testimony, however, that subsidence of the kind described here will not adversely affect wells, springs, surface watercourses,

surface drainage, erosion control, growing crops, and the roots of trees is, in my view, incredible. Such testimony serves to prove the theory that "experts" can be found to support any proposition, if a sufficiently diligent search is made. Indeed, the undisputed evidence shows that the coal company's operations will effectively duplicate the consequences of a major earthquake.

I would reverse and remand for the entry of appropriate injunctive relief.