## Richmond

### MARSH, MAYOR HENRY L., III, ET AL.

### V.

### RICHMOND NEWSPAPERS, INC., ET AL.

March 12, 1982.

Record No. 791110.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson and Stephenson, JJ., and Harrison, Retired Justice.

246

*William H. Hefty, Acting City Attorney (Conard B. Mattox, Jr., City Attorney; C. Tabor Cronk, Assistant City Attorney,* on briefs), for appellants.

*Alexander Wellford (Andrew J. Brent; William F. Etherington; Leslie W. Mullins; Christian, Barton, Epps, Brent and Chappell,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

Richmond Newspapers, Inc., and one of its employees, Timothy B. Wheeler (collectively, the Newspapers), filed a petition against Mayor Henry L. Marsh, III, and other members of the Richmond City Council[1] (collectively, the Council members), alleging violation of the Virginia Freedom of Information Act, Code §§ 2.1-340, *et seq.* (the Act). A demurrer filed by the Council members was overruled and the Newspapers filed an amended petition seeking injunctive relief, attorneys' fees and costs and, if the court should find a willful and knowing violation of the Act, imposition of civil penalties against the named Council members in their individual capacities. An answer was filed by the Council members and the matter was argued in the trial court upon stipulated facts.

On May 8, 1979, the trial court entered an order reciting that the court found that Council had violated the Act by improperly excluding the public from a meeting on March 6, 1979, with the governing bodies of the Counties of Henrico and Chesterfield and discussing in executive session matters beyond the scope of the exemption for "legal matters" provided by Code § 2.1-344(a)(6).[2] The order permanently enjoined the members of Council other than Aubrey H. Thompson, who did not attend the meeting and was not named as a party defendant, from closing any Council meeting except for the purposes specifically permitted by the Act, and from considering any matter which is not so specifically permitted during a closed meeting. The order further defined "legal matters" within the meaning of the exemption, and prescribed the steps that Council should take to convene in closed or executive session. On May 25, 1979, the trial court overruled the motion of the Council members to vacate the order of May 8.

The stipulation of facts shows that on March 1, 1979, Mayor Marsh announced that the joint meeting would be held on March 6 "to discuss the issues pertaining to the construction of the I-295

---

[1] Vice Mayor G. S. Kemp, Jr., Willie J. Dell, Carolyn C. Wake, Walter T. Kenney, Claudette Black McDaniel, Wayland W. Rennie, and Henry W. Richardson.

[2] § 2.1-344. **Executive or closed meetings.** —

(a) Executive or closed meetings may be held only for the following purposes:

* * *

(6) Consultation with legal counsel and briefings by staff members, consultants or attorneys, pertaining to actual or potential litigation, or other legal matters within the jurisdiction of the public body, and discussions or consideration of such matters without the presence of counsel, staff, consultants, or attorneys.

circumferential highway and other matters relating to regional cooperation." When convened, the joint meeting was attended by all members of City Council, except Councilman Thompson, by the members of the Chesterfield County Board of Supervisors, and by one member, Eugene Rilee, of the Henrico County Board of Supervisors. The published agenda consisted of four items: welcome by Mayor Marsh, introductory statements concerning the purpose of the meeting, presentation of proposals by Mayor Marsh, and general discussion.

After Mayor Marsh had completed his opening remarks, Richmond Vice Mayor Kemp offered the following motion:

> The announced purpose of this meeting is to discuss the issues pertaining to the construction of the I-295 Circumferential Highway and other matters relating to regional cooperation.
>
> Consideration of these subjects necessarily involve [sic] "legal matters within the jurisdication [sic] of the" City. Section 2.1-344(6) of the Code of Virginia (Freedom of Information Act) permits the Council to discuss such matters in Executive Session.
>
> I, therefore, move that the Council go into Executive Session for the purposes of discussing the matters hereinabove enumerated.

When Councilman Rennie asked Mayor Marsh to "be a little more explicit," the mayor referred to the agenda and stated that the meeting would revolve around the presentation of suggestions for "resolving the impasse between the jurisdictions surrounding the construction of I-295 and the difficulties and differences between the jurisdictions with respect to the legislation that was recently passed by the General Assembly." Although protests were voiced by Wheeler, a reporter for the Newspapers, the motion to go into executive session was approved by voice vote, Councilman Rennie not voting.

The stipulation of facts included the testimony that Mayor Marsh would have given if called as a witness. He vigorously opposed the "annexation immunity" bills, enacted by the General Assembly in its 1979 session, which protected Henrico and Chesterfield Counties. He therefore called the March 6 joint meeting to advise the governing bodies of those counties that the City

would litigate the validity of the legislation and aggressively oppose the proposed circumferential highway I-295, unless the Counties agreed to various concessions. The concessions were embodied in "The Proposal"[3] presented by the mayor and discussed at the closed meeting. At the time of the meeting, Mayor Marsh was an attorney practicing in Virginia. He was assisted in his presentation by the City Manager and an assistant to the City Manager.

After the executive session, Mayor Marsh disclosed in a press release that the following matters had been discussed:

1. The location and construction of the proposed circumferential highway.
2. The probable effect of the highway on the location of future industrial and commercial development within the region.
3. The effect that the recent "annexation legislation package" (House Bills 599, 602 and 603) will have upon the three jurisdictions.
4. The relative tax burdens of the City and the adjacent counties.
5. The cost of regional services and facilities that are provided by the City.
6. Potential procedures for the counties to participate in the cost of regional services and facilities.

The press release stated that no decisions were made in the closed meeting, that the representatives of each jurisdiction agreed to discuss the proposals with their respective bodies, and that additional discussions would be held in the "relatively near future." (On March 28, 1979, the Richmond City Council and the Henrico County Board of Supervisors met jointly in open session, but no other joint meetings were held).

The trial court ruled that the motion to go into executive session on March 6 did not comply with the requirements of Code § 2.1-

---

[3] In a document entitled "A Proposal for Improving the Tax Inequities in the Richmond Region," the City proposed the sharing by the three political subdivisions of the cost of regional services and facilities provided by the City. It was proposed that the cost be shared on the basis of population, "adjusted by the basic school aid formulas per capital index of local wealth." Supporting tables were attached.

344(b).[4] The court found that during the closed session the Council discussed the six items reported in Mayor Marsh's press release and in addition "[a] proposal for improving the tax inequities in the Richmond region," and ruled that these subjects did not come within the exemption for "legal matters" contained in Code § 2.1-344(a)(6). Accordingly, the court entered the permanent injunction order complained of.

As further relief, the court decreed that the term "legal matters" includes "only those legal matters as to which the public disclosure of facts or opinions would likely damage the City's interests and as to which confidentiality is reasonably essential to protect those interests." Finally, the court decreed that in order to comply with Code § 2.1-344(b), Council must:

(1) state and record in open meeting what subjects will be discussed in executive session and the specific subparagraph of § 2.1-344(a) which is relied upon.

(2) record in open meeting an affirmative vote by members to go into executive session;

(3) discuss in executive session only those matters specifically disclosed in open meeting pursuant to (1) above, and . . . after going into executive session to discuss a given matter, if City Council wishes to discuss in executive session other matters which properly may be discussed in executive session, City Council must reopen the meeting and once again follow the procedure outlined in (1) through (3) above, unless it be included in the original motion.

The Council members argue that the trial court erred in its findings of fact and in its granting of relief. They say that the

---

[4] Code § 2.1-344(b) provides as follows:

No meeting shall become an executive or closed meeting unless there shall have been recorded in open meeting an affirmative vote to that effect by the public body holding such meeting, which motion shall state specifically the purpose or purposes hereinabove set forth in this section which are to be the subject of such meeting and a statement included in the minutes of such meeting which shall make specific reference to the applicable exemption or exemptions as provided in subsection (a) or § 2.1-345. A general reference to the provisions of this chapter or to the exemptions of subsection (a) shall not be sufficient to satisfy the requirements for an executive or closed meeting. The public body holding such an executive or closed meeting shall restrict its consideration of matters during the closed portions to only those purposes specifically exempted from the provisions of this chapter.

motion to convene in executive session complied with Code § 2.1-344(b) and that the discussion conducted in the closed session came within the purview of the exemption provision of § 2.1-344(a)(6), erroneously stated in the motion as § 2.1-344(6). They assert that injunctive relief was unwarranted, but that, even if an injunction was justified, the relief awarded was overly broad and the court exceeded its authority in gratuitously defining statutory terms and prescribing mandatory procedures.

### 1. Legislative History of the Act.

The Act was initially approved in 1968. Acts 1968, c. 479. As enacted, Code § 2.1-344(a)(6) (Repl. Vol. 1973) provided exemption for "[c]onsultation with legal counsel and briefings by staff members, consultants or attorneys, pertaining to pending litigation, or legal matters within the jurisdiction of the public body, including legal documents." Code § 2.1-344(b) merely provided that "[n]o meeting shall become an executive or closed meeting unless there shall have been recorded an affirmative vote to that effect by the public body holding such meeting." Code § 2.1-346 provided for enforcement of the Act only by mandamus or injunction. In 1973, § 2.1-344(b) was amended to require that the closure motion "state specifically the purpose or purposes hereinabove set forth in this section which are to be the subject of such meeting." Acts 1973, c. 461.

In 1976, the pertinent provisions of the Act were substantially amended. By Acts 1976, c. 467, a policy statement was added as Code § 2.1-340.1,[5] the exemption provision of § 2.1-344(a)(6) was enlarged to apply to "actual or potential litigation," rather than "pending litigation," and a new § 2.1-346.1 authorized the imposition of a civil penalty of $25 to $500 upon a member of a governing body in his or her individual capacity for a willful and

---

[5] § 2.1-340.1. Policy of chapter. — It is the purpose of the General Assembly by providing this chapter to ensure to the people of this Commonwealth ready access to records in the custody of public officials and free entry to meetings of public bodies wherein the business of the people is being conducted. This chapter recognizes that the affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of any action taken at any level of government. To the end that the purposes of this chapter may be realized, it shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exception or exemption from applicability shall be narrowly construed in order that no thing which should be public may be hidden from any person.

knowing violation. By Acts 1976, c. 709, the present substantive requirements of § 2.1-344(b) and § 2.1-346[6] were approved. The amendment added the language in § 2.1-344(b) stating that a general reference to the provisions of the chapter or to the exemptions of subsection (a) was inadequate. Subsequent amendments to the Act are irrelevant to our consideration of the present case.

We have ascertained that every state has a statute similar in purpose to the Act, but that no two states have sought to achieve the desired result in precisely the same way. The Act differs from all others in certain respects, so that cases from other states construing their statutes are not helpful to us in our analysis. *See Hudson* v. *School Dist. of Kansas City,* 578 S.W.2d 301, 306-07 (Mo. App. 1979).

### 2. The Motion to Close the Meeting.

■■■■ The Council members argue that since the motion to go into executive session tracked the language of the statute, referred to a specific exemption by Code section, paragraph, and subparagraph, and quoted the language of the exemption, it satisfied the requirements of § 2.1-344(b). We agree where, as here, the motion also identifies the agenda item to which the specific exemption applies.

The motion stated that the purpose of the meeting was to discuss the issues pertaining to the construction of the I-295 circumferential highway and other matters relating to regional cooperation, and that the executive session was necessary to discuss "legal matters" relative thereto. Thus, the motion identified the specified exemption, § 2.1-344(a)(6), with the only business listed on the agenda. *See City of Danville* v. *Laird,* 223 Va. 271, 288 S.E.2d 429 (1982) and *Nageotte* v. *Bd. of Supervisors,* 223 Va. 259, 288

---

[6] Acts 1976, c. 709 added these provisions to § 2.1-346:

Such petition shall allege with reasonable specificity the circumstances of the denial of the rights and privileges conferred by this chapter. A single instance of denial of such rights and privileges conferred by this chapter shall be sufficient to invoke the remedies granted herein. If the court finds the denial to be in violation of the provisions of this chapter, the court may award costs and reasonable attorney's fees to the petitioning citizen. Such costs and fees shall be paid by the public body in violation of this chapter. The court may award costs and reasonable attorney's fees to the public body if the court finds that the petition was based upon a clearly inadequate case.

S.E.2d 423 (1982), both this day decided, and both pertaining to the exemption provided by § 2.1-344(a)(6).

 The Act specifically mandates a liberal construction in order that public business shall be conducted so far as possible in public. Code § 2.1-340.1, as amended in 1976, requires that all exemptions under the Act be narrowly construed. In our research, we have found such a specific requirement in the statute of only one other state, Hawaii. Haw. Rev. Stat. § 92-1. Nevertheless, this requirement does not preclude a commonsense application of the Act. A governing body is entitled to make the initial determination that an executive or closed meeting is necessary under a specified exemption to consider a subject or subjects on the agenda. The decision whether to convene in executive session must be made by members of the responsible entity who often possess information as to the subject matter that is not necessarily possessed by others. It is neither necessary nor in the public interest to require as a prerequisite to closing a meeting pursuant to § 2.1-344(a)(6) that the governing body disclose in detail the legal matters or the legal issues to be considered. To do so would tend to defeat the very confidentiality that the exemption safeguards.

We hold that the Council members complied with the provisions of § 2.1-344(b) in convening in executive session. It follows that the trial court erred in ruling to the contrary.

### 3. The Discussion in the Closed Meeting.

 The Council members contend that the trial court erred in finding that the matters discussed in the closed meeting were beyond the scope of the exemption for "legal matters" provided in § 2.1-344(a)(6). They argue that the closed session should be regarded as a briefing by an attorney, Mayor Marsh, and by staff members pertaining to potential litigation of the anti-annexation bills and also pertaining to alternatives to litigation in the form of "The Proposal." We disagree.

The motion to convene in executive session stated that the purpose was to discuss "legal matters" within the jurisdiction of the City. In the trial court and before us the Council members advanced the theory that they relied on that language in the exemption statute authorizing a closed meeting for "[c]onsultation . . . pertaining to . . . potential litigation." Although the order entered by the trial court incorporated the court's finding that seven specified matters had been discussed in executive session, and that the

discussion exceeded the bounds of the "legal matters" exemption, the trial court previously had made an oral finding during the hearing that no actual or potential litigation was discussed or, if it was, it "went far beyond" the exemption permitted on that ground.

There is ample evidence to support the finding of the trial court that discussions during the closed session ranged beyond exempted topics. We will assume, without deciding, that the Council members could lawfully discuss in closed meeting exempted matters other those specifically stated in their closure motion. It is apparent, however, that the discussions were not restricted to "legal matters" or to "potential litigation" under a narrow construction of those terms. The focal point of the discussion was "The Proposal" made by the City that the Counties of Henrico and Chesterfield cooperate by assuming a proportionate share of the cost of services and facilities provided by the City for the benefit or residents of all three jurisdictions. Mayor Marsh was not appearing as an attorney for the City; he was representing the City in his official capacity as an advocate of regional cooperation by means of "The Proposal."

The need to keep secret the City's position in respect to potential litigation over the "annexation immunity" laws was minimal, if not nonexistent, when representatives of the adversary parties to such litigation were present and participating in the discussion. Council members have not suggested that any item within "The Proposal" was sensitive information for litigation purposes, and indeed it was stressed before the meeting that the material was of "vital importance" to the citizens of the area. The most that can be made for the Council members from the record is that Mayor Marsh advised those present that the City would litigate the "annexation immunity" laws unless the Counties would agree to "various concessions." If this constituted "potential litigation," it was too remote and speculative to come within the statutory exemption. It was no more than a threat to litigate unless potential adversaries were willing to negotiate. We hold, therefore, that the trial court did not err in finding that the Council members discussed matters in executive session beyond the scope of the exemption provided by § 2.1-344(a)(6), and in ruling that in so doing they violated the Act.

### 4. The Relief Granted.

The trial court was reluctant to enter an injunction order against the Council members. Expressing the view that the Council members acted in good faith and did not mean "to do anything wrong," the court concluded that they had violated the Act, "but that it isn't likely to happen again." The court questioned the advisability of awarding an injunction "against persons who are acting in sincerity, even though wrongly." In spite of these misgivings, however, the court entered the order enjoining the Council members from closing any meeting "except for the purposes specifically permitted by §§ 2.1-344(a)(1) through (6) . . . and from considering any matter which is not so specifically permitted during any closed portion of any meeting."

As we have demonstrated, the Council members violated the Act, not in their motion to close the meeting, but in exceeding the scope of the applicable exemption in their discussions during the closed meeting.

The Council members contend that the awarding of any injunctive relief was improper under our ruling in *WTAR Radio-TV* v. *Virginia Beach,* 216 Va. 892, 223 S.E.2d 895 (1976). In that case, we held that a petition alleging violations of the Act failed to state facts sufficient to show good cause for injunctive relief when it contained no allegations from which a future violation of the Act could be apprehended with reasonable probability. 216 Va. at 895, 223 S.E.2d at 898.

Our decision in *WTAR,* affirming the ruling of the trial court in that case, was announced on April 23, 1976. On April 11, 1976, the General Assembly approved, effective July 1, 1976, the amendment to § 2.1-346 providing that "[a] single instance of denial of such rights and privileges conferred by this chapter shall be sufficient to invoke the remedies granted herein . . . ." Acts 1976, c. 709. Significantly, in our research we have been unable to find such a provision in the statutes of any other state.

The Council members assert that the petition in the present case is fatally defective for the same reason as the petition in *WTAR.* The Newspapers concede that the present case is indistinguishable from *WTAR* on this issue, but they argue that the 1976 amendment to § 2.1-346 renders their petition sufficient.

Whether enactment of the 1976 amendment was merely a coincidence or was a deliberate response to the ruling of the trial court in *WTAR* sustaining the demurrers to the petition, it appears that

the amendatory language reversed the presumption, which controlled our decision in *WTAR,* that a public official will obey the law. The trial court based its award of injunctive relief upon findings that the Council members violated the Act in two respects, only one of which findings we have affirmed. The injunction, therefore, is grounded upon one violation, not two, and one that is unlikely to be repeated. Although a trial court may in its discretion grant an injunction when there has been only a single violation of the Act, the granting of such extraordinary relief is still predicated on the probability that future violations will occur. The 1976 amendment to § 2.1-346 in effect permits a trial court to infer from a single violation that future violations will follow. Where, as in the present case, the court does not so infer, and expresses the view that there will be no future violations, there is no justification for injunctive relief. We hold, therefore, that the trial court abused its discretion by granting the injunction.

■ The additional adjudications in the court order defining "legal matters" within the meaning of § 2.1-344(a)(6) and establishing step-by-step procedures for Council to follow in closing a meeting were ancillary to the injunction. They were undoubtedly intended to assist the Council members in complying with the injunction. Since we have held that the court erred in granting the injunction we find it unnecessary to express an opinion as to the definition or the procedures. These rulings of the trial court constitute an advisory opinion, unwarranted by the pleadings, which will fall with the injunction order. *See Ted Lansing Supply* v. *Royal Alum.,* 221 Va. 1139, 1141, 277 S.E.2d 228, 229 (1981).

For the foregoing reasons, we will reverse the ruling of the trial court that the Council members violated the Act in going into executive session, we will affirm the ruling of the trial court that the Council members violated the Act in discussing nonexempt subjects in executive session, and we will reverse the order of the trial court granting injunctive and non-injunctive relief. As the Newspapers did not assign cross-error to the court's failure to award attorneys' fees we find it unnecessary to remand the case. Accordingly, we will enter a final decree consistent with the views expressed herein.

*Affirmed in part;*
*reversed in part;*
*and final decree.*