# Richmond

## RICHARD R. NAGEOTTE, ET AL.

### V.

## BOARD OF SUPERVISORS OF KING GEORGE COUNTY, ET AL.

March 12, 1982.

Record No. 791388.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

*Richard R. Nageotte, Pro se (B. Calvin Burns, Pro se,* on brief).

*John P. Harris, III (Harris & Harris,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

This is one of three appeals arising from rulings of trial courts in cases in which local governing bodies were alleged to have violated the Virginia Freedom of Information Act, Code §§ 2.1-340, *et seq.* (the Act). See *Marsh* v. *Rich. Newspapers, Inc.,* 223 Va. 245, 288 S.E.2d 415 (1982), and *City of Danville* v. *Laird,* 223 Va. 271, 288 S.E.2d 429 (1982), both this day decided.

In this case, Richard R. Nageotte and B. Calvin Burns filed in the trial court a bill of complaint, subsequently amended, against defendants, James B. Howard, Woodrow W. Saft, and Reginald P. Hayden, individually, and collectively as the Board of Supervisors of King George County, and John P. Harris, III, Commonwealth's Attorney and County Attorney of King George County. The amended bill of complaint alleged that the Board violated the

Act by conducting meetings without proper notice to the public, by failing to maintain and make available for inspection records of such meetings, and by holding executive or closed meetings in violation of Code § 2.1-344. Complainants sought to have the court invalidate all actions taken in violation of the Act, enjoin defendants from further violations, award attorneys' fees and costs to complainants, determine that the violations were willful and knowing, and impose upon defendants in their individual capacities a civil penalty of not less than $25 nor more than $500 for such willful and knowing violations. An answer was filed on behalf of the defendants denying any violations of the Act.

The trial court, after hearing the evidence *ore tenus* on four separate dates, filed a written opinion dated May 22, 1979, ruling in favor of defendants. Complainants filed a motion to reconsider on the ground that the court's opinion failed to address certain meetings which complainants had alleged were held in violation of the Act. In its final order entered June 18, 1979, the court referred to complainants' motion to reconsider but implicitly overruled it by awarding judgment in favor of defendants and dismissing the cause with prejudice. We granted Nageotte and Burns an appeal limited to the questions whether the trial court erred in not finding that the Board violated the Act by not stating the specific purpose for going into executive session, and whether the court erred in finding that the Board did not violate the Act by holding specific meetings without giving public notice and recording minutes.

On November 9, 1978, the Board, consisting of three members, convened in a special meeting. The minutes of the meeting show that it was called for the purpose of discussing with representatives of DANO Resource Recovery, Inc., "the company's plans to locate in the county and the pertinent permits which must be obtained." After Board members had expressed a desire to consider with open minds the proposed DANO operation, which they recognized as a controversial issue, the DANO representatives made an extensive presentation. They explained that DANO proposed to transport solid waste and sewage sludge from Washington, D.C., for processing into usable compost with "three times the nutrient value of cow manure" in a $10 million facility to be constructed in King George County. The representatives described various safety and screening measures to protect the public, and responded to questions. The minutes reflect the following actions:

Upon a motion by Mr. Saft, seconded by Mr. Hayden, and carried unanimously, the Board went into Executive Session to confer with legal counsel.

On a motion by Mr. Hayden, seconded by Mr. Saft, and carried unanimously, the Board returned to Public Session.

Mr. Howard stated that during Executive Session the Board had received the advice of counsel and no decisions had been made by the Board.

The meeting was adjourned at this point.

The Executive Secretary of the County testified that the minutes of the November 9 meeting reflected typical motions of the Board to convene in executive session, and that such motions appeared consistently in the minutes. She said that she did not attend executive sessions and that no minutes were taken at such sessions.

On November 16, the Board held a regular meeting and considered many matters, including a presentation by the King George Environmental Association of a statement in opposition to the DANO proposal. Immediately following this presentation, the minutes show that on motion unanimously approved "the Board went into Executive Session to receive advice of legal counsel." Upon returning to public session, the chairman stated that "during Executive Session the Board had received the advice of counsel and no decisions were reached."

Later in the meeting a second executive session was convened "for legal counsel." Upon returning to public session, the chairman reported that no decision had been reached in the closed session. The Board then approved motions directing the Commonwealth's Attorney "to contact the Attorney's General's office to arrange an appearance before the Board of Supervisors to render legal advice," and directing the Commonwealth's Attorney to represent the defendants in a certain law action. The record shows that this law action was filed by Nageotte and Burns against members of the Board individually, alleging interference with a contract. A non-suit subsequently was taken in the action.

The Board convened in a regular meeting on January 4, 1979, at which many items of business were considered. After setting dates for public hearings concerning a possible application to a federal agency for a Community Development Grant, the Board approved a motion to go into executive session, "for legal counsel

and to discuss personnel matters." Following the closed session the chairman stated that the Board in executive session had discussed "legal and personnel matters and no decisions had been reached." The Board then passed a resolution concerning the location of a proposed new post office, and a detailed resolution opposing location by Southern Marine and Salvage Company of a composting facility (the DANO project).

On January 18, the Board met again in regular session and discussed a variety of subjects. After approving a request to use a County facility, the Board went into executive session "for legal counsel." Returning to public session, the Chairman announced that the Board had gone into executive session "for legal counsel and no action had been taken or decisions made." The Commonwealth's Attorney then advised the Board that upon investigation he had found discrepancies in the applications of Southern Marine and Salvage Company for permits for the DANO project. Thereupon, the Board approved a motion revoking the building permits.

In addition to the foregoing meetings of the Board, there was evidence that two members met with the County Administrator on the morning of November 12, a Sunday, and that all three members met in the office of the Attorney General of Virginia on November 20. No minutes were kept on either occasion.

At trial, Nageotte, representing himself and Burns, examined as adverse witnesses the Board members and others present during executive sessions of the Board, for the purpose of proving that in such sessions the Board members discussed and acted on nonexempt topics in violation of the Act.[1] The Board members testified,

---

[1] Code § 2.1-344 provides in pertinent part:

§ **2.1-344. Executive or closed meetings.** — (a) Executive or closed meetings may be held only for the following purposes:

\* \* \*

(6) Consultation with legal counsel and briefings by staff members, consultants or attorneys, pertaining to actual or potential litigation, or other legal matters within the jurisdiction of the public body, and discussions or consideration of such matters without the presence of counsel, staff, consultants, or attorneys.

\* \* \*

(b) No meeting shall become an executive or closed meeting unless there shall have been recorded in open meeting an affirmative vote to that effect by the public body holding such meeting, which motion shall state specifically the purpose or purposes hereinabove set forth in this section which are to be the subject of such meeting and a statement included in the minutes of such meeting which shall make specific reference to the applicable exemption or exemptions as provided in subsection (a) or § 2.1-345. A general reference to the provisions of this chapter or to the

consistently with the Board minutes, that they discussed only legal matters relating to the DANO project. They declined to divulge the details or substance of their discussions with counsel on the ground that such information was privileged because of the attorney-client relationship.

After hearing the witnesses, the trial court found that none of the discussions conducted in executive session violated the Act. Nageotte and Burns have not assigned error to this finding, but they challenge on appeal the adequacy of the motions to go into executive session.

In *Marsh* and *City of Danville, supra,* we held that a motion to meet in executive session that follows the language of the statutory exemption and identifies the agenda item or items to be discussed with legal counsel is sufficient. In the present case, none of the motions followed the language of the applicable statutory exemption. Since the November 9 meeting was a special meeting limited to consideration of the DANO project, the purpose of the executive session necessarily related to that business. Likewise, the first executive session convened at the November 16 meeting apparently was related to the DANO project because the closed session immediately followed the presentation of a statement opposing the project. At the January 4 and January 18 meetings there were no identifiable connections between the motions to go into executive session and business then under consideration by the Board.

On appeal, the Board members contend that by stating that the executive sessions would be held for legal advice, or the equivalent, they adequately stated the purpose in compliance with § 2.1-344(b). They say that the statute does not require that the subject matter be stated. But, as we have ruled in *Marsh* and·*City of Danville,* we construe the Act to require that the purpose be identified with the applicable item of business on the agenda where the executive session is convened under the provisions of §

exemptions of subsection (a) shall not be sufficient to satisfy the requirements for an executive or closed meeting. The public body holding such an executive or closed meeting shall restrict its consideration of matters during the closed portions to only those purposes specifically exempted from the provisions of this chapter.

(c) No resolution, ordinance, rule, contract, regulation or motion adopted, passed or agreed to in an executive or closed meeting shall become effective unless such public body, following such meeting, reconvenes in open meeting and takes a vote of the membership on such resolution, ordinance, rule, contract, regulation or motion.

* * *

2.1-344(a)(6). One of the executive sessions, however, was convened to confer with counsel and also to consider personnel matters, presumably under § 2.1-344(a)(1). Assuming, without deciding, that two exempt topics could be discussed in the same session, we hold that it is not necessary to identify the personnel in convening an executive session to consider personnel matters. We perceive no legislative intent to require such an unnecessary and disruptive act as a prerequisite to invoking this exemption.

The trial court acknowledged the deficiencies in the motions, and cautioned the Board to state in the future with greater specificity its purpose in convening in executive session. Nevertheless, the court ruled that there must be "more proof of violation of the Act than has been adduced . . . to establish such wrongdoing as is alleged in Complainants' Bill of Complaint." In spite of the inadequacies in the motions to go into executive session, therefore, the court ruled that the evidence of violations was insufficient to entitle Nageotte and Burns to relief.

Consistent with the principles set forth in *Marsh* and *City of Danville,* we hold that the Board's motions to go into executive session did not adequately comply with the provisions of Code § 2.1-344(b). The trial court found no evidence of bad faith in the Board's motions to go into executive session at the meetings of November 9 and November 16. No such finding was made as to the motions made at the January 4 and January 18 meetings, but the record shows no evidence of bad faith in closing those meetings. The evidence is uncontradicted that the Board acted in accordance with the advice of counsel.

■ Nageotte and Burns sought in this proceeding to invalidate the Board's actions in respect to the DANO project. The Board minutes and the testimony of Board members, however, showed that the Board voted in open meeting on all matters relating to DANO in compliance with § 2.1-344(c). Therefore, the Board actions are not invalidated by violations of the Act.[2]

---

[2] Code § 2.1-344(c) is almost unique. Arkansas has a similar statute, cited in *Yandell* v. *Havana Bd. of Education,* 266 Ark. 434, 585 S.W.2d 927 (1979). But even in the absence of such a statute the better-reasoned cases reach the same conclusion. Unless there is a specific statutory provision for invalidation, courts are "generally wary" of imposing "such penalty for violation of 'open meeting' or 'right to know' statutes." *Wilmington Federation of Teachers* v. *Howell,* 374 A.2d 832, 835 (Del. 1977), citing *Sullivan* v. *Credit River Township,* 299 Minn. 170, 217 N.W.2d 502 (1974), *Carter* v. *City of Nashua,* 113 N.H. 407, 308 A.2d 847 (1973), *State ex rel. Werlein* v. *Elamore,* 33 Wis.2d 288, 147 N.W.2d 252 (1967), and Comment, *Open Meeting Statutes: The Press Fights for the "Right to*

■ Nageotte and Burns contend that the court erred in finding that the Board did not "meet" within the meaning of § 2.1-341[3] on November 12 and November 20. We disagree.

The evidence as to the alleged meeting of November 12 was conflicting. Testimony by DANO officials tended to imply that the Board reversed itself on granting necessary permits between Friday, November 10, and Sunday, November 12. One DANO witness testified that the Commonwealth's Attorney told him on November 12, that a meeting took place at Hot Springs at 2:00 a.m. on that date. The evidence for the Board was that the two Board members who attended a Virginia Association of Counties conference at Hot Springs did not leave the county for that purpose until later that day. There was evidence that the two Board members met with the County Administrator on the morning of the 12th but only for the purpose of discussing matters unrelated to DANO concerning the Administrator's inability to accompany them to Hot Springs and topics that he wished to have considered at the conference. The Board members and the County Administrator testified that there had been no meeting and no directive concerning DANO over this weekend. The trial court resolved these issues of fact in favor of the Board and held that there were no "meetings" held within the meaning of the Act.

---

Know," 75 Harv. L. Rev. 1199, 1213-14 (1962). *See also Cooper* v. *Arizona Western College, Etc.*, 125 Ariz. 463, 610 P.2d 465 (Ariz. App. 1980), holding that a public body may ratify in open session an illegal act taken in a closed session, notwithstanding an express statutory provision voiding closed-session decisions; *Hawkins* v. *City of Fayette*, 604 S.W.2d 716, 723-25 (Mo. App. 1980).

[3] § 2.1-341 (Repl. Vol. 1979) defines "meeting" for purposes of the Act as follows:

(a) "Meeting" or "meetings" means the meetings, when sitting as a body or entity, or as an informal assemblage of (i) as many as three members, or (ii) a quorum, if less than three, of the constituent membership, wherever held, with or without minutes being taken, whether or not votes are cast, of any legislative body, authority, board, bureau, commission, district or agency of the State or of any political subdivision of the State, including cities, towns and counties; municipal councils, governing bodies of counties, school boards and planning commissions; boards of visitors of State institutions of higher education; and other organizations, corporations or agencies in the State, supported wholly or principally by public funds. The notice provisions of this chapter shall not apply to the said informal meetings or gatherings of the members of the General Assembly. Nothing in this chapter shall be construed to make unlawful the gathering or attendance of two or more members of a body or entity at any place or function where no part of the purpose of such gathering or attendance is the discussion or transaction of any public business, and such gathering or attendance was not called or prearranged with any purpose of discussing or transacting any business of the body or entity.

As to the conference in the Attorney General's office on November 20, the evidence was that the meeting was only for the purpose of gathering information "to find out again the role of the County meshing with the State agencies in this process" of issuing certain permits for the DANO project. No public notice of the meeting was given and no minutes were kept. Representatives of several State agencies were present, and the public was not excluded. The only evidence on the issue was that the Board did not arrange the meeting to conduct any public business, but that it merely sought information as to the respective responsibilities of the State and the local governing body. The evidence supports the implicit finding by the trial court that this conference was not a "meeting" as defined in § 2.1-341 of the Act.

In summary, the record shows that the Board, while acting in good faith with the advice of counsel, failed to comply with the provisions of the Act in convening executive sessions. Since there were no willful and knowing violations, there could be no imposition of civil penalties under § 2.1-346.1.[4] There were no discussions of nonexempt subjects in the executive sessions and no decisions were made in such sessions. Under § 2.1-344(c) the validity of actions taken by the Board in open meetings is not affected by violations of the Act, regardless of what was done or said in executive sessions. There were no "meetings" within the meaning of the Act on November 12 or November 20.

It is apparent, therefore, that Nageotte and Burns were not prejudiced by the Board's violation of the Act in approving closed sessions. Nevertheless, they have asked us to enjoin the Board from future violations of the Act. We decline to do so. The awarding of injunctive relief is generally discretionary. In this case, the trial court used precatory language "to suggest that the purpose of future Executive Sessions be spelled out in as great detail as practicable." We see no necessity for enlarging this suggestion into the formal structure of an injunction. We are unwilling to impose a restraining order against a governing body which

---

[4] Code § 2.1-346.1 states as follows:

In a proceeding commenced against members of public bodies under § 2.1-346 for a violation of §§ 2.1-342, 2.1-343 or 2.1-344, the court, if it finds that a violation was willfully and knowingly made, shall impose upon such person or persons in his or her individual capacity, whether a writ of mandamus or injunctive relief is awarded or not, a civil penalty of not less than twenty-five dollars nor more than five hundred dollars, which amount shall be paid into the State Literary Fund.

in good faith committed unsubstantial violations based on an erroneous construction of the Act. Under § 2.1-346, a single violation of the Act is sufficient to permit the granting of relief based on the inference that future violations will occur, but such an extraordinary and drastic remedy is not to be casually or perfunctorily ordered and it will not be granted in this case.

Finally, Nageotte and Burns have asked that we require the Board to pay their attorneys' fees and reasonable costs as authorized, but not mandated, by § 2.1-346. As concerned citizens, Nageotte and Burns had the right to challenge the Board's actions under the Act, and they did so *pro se*. The trial court in its written opinion referred to Nageotte's "probing, searching, lengthy and pounding" examination of Board members and others as adverse witnesses for the "main purpose" of eliciting admissions "that subjects were taken up" in executive sessions in violation of the Act. Having failed in this main purpose, Nageotte and Burns have continued their efforts to establish that violations occurred.

We agree that violations occurred, but there were no willful and knowing violations, there were no violations that would invalidate Board actions with which Nageotte and Burns were concerned, and there were no violations justifying injunctive relief or the award of attorneys' fees and costs. Therefore, we hold that the error of the trial court in not finding that the motions to go into executive session were violative of the Act was harmless in the context of the unsubstantial nature of the violations and the relief sought in this case. We will affirm the final order of the trial court.

*Affirmed.*