## CIRCUIT COURT OF THE CITY OF RICHMOND

George B. Little

v.

Virginia Retirement System

September 17, 1990

Case No. HA-741-4

By JUDGE RANDALL G. JOHNSON

This action arises under the Virginia Freedom of Information Act, Va. Code § 2.1-340 *et seq.* At issue is whether the Board of Trustees of the Virginia Retirement System ("VRS") and/or two of its committees violated the Act by the manner in which they went into and out of executive sessions, and by discussing in executive sessions matters which the Act does not exempt from the requirement of public discussion and disclosure.

An ore tenus hearing was held on August 3, 1990. At that hearing, the court found sufficient evidence to conclude that the Act had been violated. Specifically, the court found that on several occasions, the minutes of the Board and its committees failed to show that a vote was taken in open session to convene an executive session as required by § 2.1-344.1(A) and that those minutes also failed to reflect that, as required by § 2.1-344.1(D), a vote was taken at the conclusion of each executive session by which all members of the Board or Committee certified

that only public business matters lawfully exempted from open meeting requirements under the Act, and that were identified in the motion by which the executive session was convened, were heard, discussed, or considered in the executive session. The court was also troubled by, but made no finding on, whether the motions to go into the executive sessions adequately identified the substance of the matters to be discussed, again as required by Section 2.1-344.1(A).

As a result of its findings and concerns, the court entered an order on August 7th enjoining VRS, its Board of Trustees, and all committees of the Board from meeting in executive session in violation of Va. Code §§ 2.1-344 and 2.1-344.1. The Board and its appropriate committees were also ordered to prepare minutes of all executive sessions held during meetings of the Board or its committees on March 15, April 11, April 30, May 10, May 17-18, and May 21, 1990, and to submit such minutes to the court for an *in camera* review. Since the Freedom of Information Act does not require that minutes be taken during executive sessions, and since no minutes had been taken at any of the executive sessions involved here, such minutes were to be prepared upon the individual and collective recollections of the members in attendance, with all members who were in attendance certifying under oath that the reconstructed minutes are accurate and complete. Finally, the court directed the Board and all of its committees to maintain complete and accurate minutes of all future executive sessions until otherwise ordered.

Pursuant to the foregoing order, counsel for the Board has provided the court with minutes of executive sessions held during the following meetings:

1. March 15 meeting of the Board of Trustees;
2. April 11 meeting of the Investment Advisory Committee;
3. April 30 meeting of the Special Committee on the Richmond, Fredericksburg, and Potomac Railroad Merger;
4. May 10 meeting of the Board of Trustees;
5. May 17-18 meeting of the Board of Trustees; and
6. May 21 meeting of the Investment Advisory Committee.

The court has also received, at the request of counsel for the parties, letter-memoranda setting forth the parties' respective positions and legal arguments. Because the petitioner alleges both substantive and procedural violations of the Act, the court will consider each type of violation separately.

### 1. *Discussions in Executive Session*

The court has carefully read the minutes provided by VRS. As previously noted, each member in attendance was required to certify, under oath and in writing, that the minutes are accurate and complete. After reviewing the minutes, the court is completely satisfied that all of the matters discussed by the Board and its committees in each of the executive sessions at issue are matters that are specifically exempted from public discussion and disclosure by the Act itself. Specifically, those discussions dealt with personnel matters (§ 2.1-344(A)(1)), legal matters (§ 2.1-344(A)(7)), and the "investing of public funds where competition or bargaining is involved, where if made public initially the financial interest of the governmental unit would be adversely affected." Section 2.1-344(A)(6). Because such matters are specifically exempt from public discussion or disclosure, the Board and its committees did not violate the Act with regard to any of the discussions held in the executive sessions in question.

### 2. *Procedural Matters*

With regard to petitioner's allegations of procedural violations, those allegations fall into three categories. First, petitioner alleges that the Board and its committees have consistently failed to take a vote to go into executive session. Second, petitioner alleges that the Board and its committees have likewise failed to take a vote after executive sessions certifying that only appropriate matters were discussed in executive session, and that such matters did not exceed the scope of the motion to go into executive session. Third, petitioner alleges that the motions to go into executive sessions did not adequately identify the matters to be discussed.

With regard to the first two categories, the court's determination of whether the act has been violated is not difficult. Va. Code § 2.1-344.1(A) states, in pertinent part:

> No meetings [*sic*] shall become an executive or closed meeting unless the public body proposing to convene such meeting shall have taken an affirmative recorded vote in open session to that effect . . . .

Va. Code § 2.1-344.1(D) provides, again in pertinent part:

> At the conclusion of any executive or closed meeting convened hereunder, the public body holding such meeting shall reconvene in open session immediately thereafter and shall take a roll call or other recorded vote to be included in the minutes of that body, certifying that to the best of the member's knowledge (i) only public business matters lawfully exempted from open meeting requirements under this chapter, and (ii) only such public business matters as were identified in the motion by which the executive or closed meeting was convened were heard, discussed, or considered in the meeting by the public body.

It is clear from a review of the minutes of the open meetings of the Board and its committees that the above requirements have not always been met. In fact, as petitioner has alleged, the Board and its committees consistently failed, at least prior to April, 1990, to reflect in their minutes the fact that votes to go into executive sessions were taken, or that certifying votes were taken after executive sessions were concluded. Clearly and conclusively, then, the Act has been violated with regard to the first two categories of alleged violations.

The court's decision with regard to the third category of violations is not as easy. Va. Code § 2.1-344.1(A), a portion of which was quoted above, goes on to provide that the affirmative vote required by that section shall be:

by motion stating specifically the purpose or purposes which are to be the subject of the meeting, and reasonably identifying the substance of the matters to be discussed. A statement shall be included in the minutes of the open meeting which shall make specific reference to the applicable exemption or exemptions from open meeting requirements provided in subsection A of § 2.1-344 or in § 2.1-345, and the matters contained in such motion shall be set forth in those minutes. A general reference to the provisions of this chapter or authorized exemptions from open meeting requirements shall not be sufficient to satisfy the requirements for an executive or closed meeting.

Petitioner alleges that the above provision was violated when the Board and its committees went into executive session to discuss "personnel matters," "legal matters," and "divestment" of VRS holdings in companies doing business in or with the Republic of South Africa. It is petitioner's position that the Board and its committees should have been more specific in identifying the personnel matters, legal matters, and divestment matters to be discussed. The court concludes that petitioner is only partially correct.

In *Marsh v. Richmond Newspapers, Inc.*, 223 Va. 245, 288 S.E.2d 415 (1982), the Supreme Court held that where *legal* matters are to be discussed, § 2.1-344.1(A) was complied with where the motion to go into executive session tracked the language of the statute, referred to a specific exemption by code section, paragraph, and subparagraph, quoted the language of the exemption, *and* identified the agenda item to which the exemption applied. 223 Va. at 254. In *Nageotte v. King George County*, 223 Va. 259, 288 S.E.2d 423 (1982), decided the same day as *Marsh*, the Court explained that its holding in *Marsh* was that where the "legal matters" exemption of § 2.1-344 is claimed, the Act requires that the purpose for going into executive session be identified with the applicable item of business on the agenda. 223 Va. at 266-67.

On the other hand, the court in *Nageotte* was careful to point out that where the "personnel matters" exemption is claimed, it is not necessary to identify the personnel involved. *Id.* at 267. Such a distinction makes perfect sense. If a public body were required to identify the people or jobs to be discussed in executive session, much of the purpose for going into executive session in the first place would be defeated. Indeed, this court can think of few instances where, assuming an executive session is appropriate to discuss a personnel matter, a public body can say more than that a "personnel matter" will be discussed without disclosing that which the Act specifically exempts from disclosure. References to particular persons, jobs, categories of jobs, incidents to be considered for possible disciplinary action, and similar identifying statements would more than likely enable an observer to discern the precise personnel matter to be discussed, including the particular person or persons involved. As the Supreme Court said in *Nageotte*, there can be perceived "no legislative intent to require such an unnecessary and disruptive act as a prerequisite to invoking this exemption." 223 Va. at 267.

Moreover, while the Court in *Nageotte* was concerned specifically with drawing a distinction between the Act's exemptions for "legal" matters and "personnel" matters, its holding logically applies to other exemptions as well. Specifically, this court is of the opinion that discussions allowed under the exemption set out in § 2.1-344(A)(6) also do not lend themselves to more specific identification than the language of the exemption itself. That language is:

> The investing of public funds where competition or bargaining is involved, where if made public initially, the financial interest of the governmental unit would be adversely affected.

In reaching this conclusion, the court has necessarily considered the nature of the exemption provided for in Section 2.1-344(A)(6). It is the Board's position that where substantial amounts of public funds are invested in actively traded stocks and securities, or where a public body is considering investing substantial sums in such

stocks and securities, the very nature of the stock and securities markets makes all preliminary discussions of contemplated movements of such funds into, out of, or within those markets exempt from public disclosure and scrutiny under § 2.1-244(A)(6). This is so, according to the Board, because competition and bargaining are *always* involved when substantial sums of money are put into or taken out of such markets, or when substantial sums of money are moved from one stock or security to another. The court agrees.

Stock and securities markets, by their very nature, revolve around competition and bargaining. If demand for a stock is high, its market price rises. If demand is low, it falls. Not only do stocks compete with each other for investors' dollars, investors compete with each other for the best deals in the markets. More importantly for our purposes here, the value of a particular investment can be drastically affected by the forces of competition and bargaining in the various financial markets. Specifically, if investors learn that a public entity such as VRS is contemplating selling, or "dumping," all or a substantial portion of its stock in the XYZ Company, such company doing business in South Africa, the forces of the market will naturally cause the price of that stock to come down since shares will now be readily available. By the same token, if it becomes known that such public entity is considering buying shares in another company to replace its investment in the XYZ Company, the price of the second company's shares will increase to take advantage of the public body's "forced buy." It is readily apparent that in each of these scenarios, the "financial interest of the governmental unit would be adversely affected." Va. Code § 2.1-344(A)(6).

Moreover, this court is of the opinion that in the normal case, matters to be discussed under the "investing of public funds" exemption, like the "personnel matters" exemption previously discussed, cannot be identified in any greater detail than by quoting the language of the exemption itself. To hold otherwise would inform keen investors of the particular investments involved, thus causing the previously-discussed market pressures to work against the public body's -- and thus the public's -- interest. As *Marsh v. Richmond Newspapers* reminds us,

the requirement that all exemptions to public meetings be narrowly construed "does not preclude a common sense application of the Act." 223 Va. at 255. Thus, it is the holding of this court that where identification or explanation of matters to be discussed in executive session would amount to pubic disclosure of matters which are exempt from such disclosure, or where such identification or explanation would defeat the very purpose for going into executive session in the first place, more than a citation to the statutory exemption and a general statement of the exemption is not required. This, in the court's view, is the "common sense" approach mentioned in *Marsh*. Of course, the actual matters to be discussed in executive session must be exempt from public discussion and disclosure under the Act.

Applying the above principles to the facts of this case, the court concludes that the Board and its committees committed no procedural violations of the Freedom of Information Act when the motions to convene executive sessions stated simply that such sessions were being convened to discuss "personnel matters." As stated above, any further identification or explanation of the matters to be discussed in such sessions would destroy the very purpose for the "personnel matters" exemption of the Act.

Similarly, the court holds that the Board and its committees did not violate the Act when they convened executive sessions to discuss possible divestment of VRS holdings in companies that do business in or with South Africa. In making this ruling, the court is not unmindful of petitioner's argument that it is improper for executive sessions to be called simply by stating that the Board or committee will discuss "divestment." Indeed, the court agrees with petitioner that such a general explanation is not sufficient to comply with the Act. And naturally, the Act itself contains no "divestment" exemption.

The fact is, however, that the executive sessions in question were not called simply by referring to "divestment." Instead, the Board and its Investment Advisory Committee specifically stated that such sessions were being convened in accordance with the "investing of public funds" exemption of the Act. Specifically, the minutes of the May 21, 1990, meeting of the Investment Advisory Committee, one of the two meetings petitioner alleges

involved executive sessions improperly convened to discuss "divestment," contain the following passage:

> In accordance with the provisions of § 2.1-344(A) of the Code of Virginia, it is moved and seconded that the Investment Advisory Committee go into Executive Session for the purpose of discussing or considering the investing of public funds where competition or bargaining is involved, where if made public initially, the financial interest of the governmental unit would be adversely affected.

Indeed, in a letter written by petitioner to the chairman of the committee, petitioner, who was present at the meeting, acknowledged that when he questioned why an executive session was being called, he was specifically referred to § 2.1-344(A)(6) of the Code, the exemption covering investment of public funds.

Similarly, while the court has not been presented with minutes of the June 14th meeting of the Board, the only other meeting at which petitioner claims a "divestment" exemption was claimed,[1] petitioner has presented no evidence to indicate that a similar reference to the statute was not also given. In fact, as the court recalls the August 3rd hearing, petitioner chose not to pursue his claim regarding the June 14th meeting and did not even ask that minutes of the executive session held on that date be produced. Having held that the exemption regarding investment of public funds where competition or bargaining is involved is the type of exemption which, like "personnel matters," cannot be appropriately identified in any greater detail than is provided by the language of the exemption itself, the court holds that the Board and its Investment Advisory Committee did not violate the Act by going into executive session on May 21 and June 14, 1990, to discuss

---

[1] The court notes that an executive session was also called during the Board's meeting on May 17, the stated purpose being to discuss matters exempt under Section 2.1-344(A)(6), and which related to the Governor's Directive # 8 (divestment) and the "fairness" of the proposed CSX/RF&P merger. Petitioner has not challenged the adequacy of that explanation.

the investing of public funds as such investing relates to divestment.[2]

The court does find, however, that the Investment Advisory Committee did violate the Freedom of Information Act during its meeting of April 11, 1990. At that meeting, an executive session was called "for the purpose of discussing or considering legal matters." As has already been pointed out, *Marsh v. Richmond Newspapers* requires more than a bare reference to "legal matters." The specific agenda item, or at least some statement of the subject matter which requires the discussion of legal matters, must be stated. Having read the minutes of the April 11th executive session, the court believes that simply moving for an executive session "to discuss legal matters involving the proposed CSX/RF&P merger" would have been sufficient. Simply referring to "legal matters" was not.

## 3. *Relief*

Having found that VRS violated the Freedom of Information Act in the areas discussed above, the court must now decide what, if any, relief to award. Petitioner does not allege that respondents' violations of the Act were willful or knowing, so civil penalties under § 2.1-346.1 are not an issue. Petitioner asks, however, that the court award injunctive relief and attorney's fees, both of which may be awarded whether the public body has acted willifully or not. VRS argues that the court should award neither. The court agrees with VRS.

With regard to injunctive relief, the Supreme Court in *Nageotte v. King George County*, *supra*, held that the awarding of such relief is generally discretionary. After finding that the respondents had violated the Act, but

---

[2] The court does not mean to imply by this ruling that all issues concerning divestment are exempt under the Act. As petitioner suggests, there are many matters pertaining to the broad subject of divestment which do not involve the "investing of public funds where competition or bargaining is involved." Indeed, discussions concerning the political or moral propriety of divestment would not appear to be covered by any of the statutory exemptions. The court is satisfied, however, that all discussions involving divestment during the executive sessions involved in this case fit squarely within the exemption contained in the Act.

that such violations had not prejudiced the petitioners and were made in good faith upon an erroneous construction of the Act, the Court declined to award any injunctive relief. This court similarly declines to award injunctive relief here.

The violations of the Freedom of Information Act committed by VRS' Board of Trustees and two of its committees were purely technical violations. None of the matters actually discussed during any of the executive sessions at issue in this case fall outside of the exemptions created by the General Assembly. It is true that the respondents often did not properly record in their minutes the fact that the required votes -- both before and after the executive sessions -- were taken. It is also true that on one occasion, one of the Board's committees failed to adequately identify the "legal matters" to be discussed in executive session. The court is impressed, however, with the testimony at the August 3rd hearing and the representations of the Board's legal counsel that such procedural violations were already well on the way to being corrected at the time the present petition was filed. Specifically, the Board now has legal counsel at its meetings, and the more recent minutes of meetings of the Board and its committees clearly reflect that the voting requirements for going into and coming out of executive sessions are now being complied with. Similarly, except for the inadequate description of "legal matters" at the Investment Advisory Committee's meeting of April 11, 1990, the Board and its committees have consistently and adequately identified the reasons for going into executive session. As the Court said in *Marsh v. Richmond Newspapers, supra,* the granting of injunctive relief is predicated on the probability that future violations will occur. In light of VRS's consistent compliance with the Act at its more recent meetings, as well as the court's confidence that its present counsel will insist on continued compliance with the Act, the court sees no need to grant any injunctive relief at all. Of course, there is nothing to prevent a judge from considering the violations found in this proceeding in fashioning appropriate relief in the event a future petitioner is able to show that a violation has occurred subsequent to this decision.

The court will also deny petitioner's request for attorney's fees. Again, the court believes that the Board and its committees had brought their procedures into compliance with the Act well before the filing of this action.[3] Indeed, all of the minutes after March reflect that the required "before and after" votes were taken. In addition, as previously noted, only the "legal matters" exemption at the April 11th meeting of the Investment Advisory Committee failed to adequately identify the matters to be discussed in any of the executive sessions challenged by petitioner. All other statements of purpose, both before and after that date, have been found by the court to be adequate.

Further, from the tenor of the petition filed with this court, particularly petitioner's May 24th letter to Mr. Finn,[4] which is attached as an exhibit to the petition, the whole thrust of petitioner's efforts in this proceeding was to require disclosure of the Board's discussions concerning divestment. Since the court has now held that those discussions were properly held in executive session, and that the descriptions of the intended discussions were sufficient to comply with § 2.1-344.1(A), petitioner has failed to prove the major portion of his case. Thus, not only does the court feel that an award of attorney's fees would be unjust because of VRS' recent history of compliance, the court also does not believe that petitioner has substantially prevailed in this proceeding. Accordingly, no attorney's fees will be awarded.

[3] Petitioner filed this action on July 6th.

[4] Mark T. Finn is chairman of the Board's Investment Advisory Committee.