## CIRCUIT COURT OF THE CITY OF RICHMOND

Janice L. Redinger

v.

John T. Casteen, III

January 18, 1995

Case No. LX-2908-1

BY JUDGE MELVIN R. HUGHES, JR.

This is an action brought by a Virginia citizen seeking mandamus against the President of the University of Virginia pursuant to the Va. Code § 2.1-346 under the Virginia Freedom of Information Act, § 2.1-340 *et seq.* (The Act or FOIA.) Disclosure is sought of certain documents relating to a settlement of certain student disciplinary charges involving a law firm representing the student involved (Leggett) and the University. Specifically, the documents listed for disclosure in the Petition are:

> All correspondence between Williams & Connolly and you and/or between Williams & Connolly and James J. Mingle (General Counsel for respondent and the University) or any other UVA official in connection with the Leggett-Honor Committee matter.
>
> All statements or bills for services rendered by Williams & Connolly received by UVA, you, Mingle, or any other UVA official in connection with the Leggett-Honor Committee matter.

The University has resisted disclosure on the grounds that the requested documents are exempt as "work product" under the Act, that a disclosure would violate federal and state law relating to confidentiality of student records, and that billing statements are available to plaintiff but, through no fault of the University, some of them were redacted when received by the University. The University has furnished documents covered by the request to the Court for *in camera* inspection.

To decide the issues the Court needs to set out the background. These underlying facts are derived from the pleading and from other materials including newspaper articles provided by petitioner without objection the day the matter was argued. That day the case was taken under advisement to allow the University to file a responsive brief. Afterwards, not only did the University file a responsive brief but the parties thereafter filed letters responding to points raised by the other. The last letter was received on or about December 9.

In the spring of 1993, Christopher Leggett, a former student, was requested to leave the University after the student Honor Committee found after a hearing that he had violated the University's Honor Code. The proceedings stemmed from an accusation of cheating on a computer science test in 1992. After a series of unsuccessful appeals and after a request for rehearing was denied, in June 1994, Williams & Connolly, a Washington, D.C., law firm representing Leggett, wrote a letter to the University threatening suit on the grounds that several procedural and constitutional violations had occurred in Leggett's case. Within two months, amid accusations of improper pressures by the University administration on the student run Honor Committee, Leggett won a retrial and was exonerated. Thereafter, the University confirmed that it had entered into a settlement with Leggett whereby he would be granted a retrial and the University would pay about $40,000 in legal fees due from Leggett to Williams & Connolly for his defense. There was much controversy surrounding whether the entire Honor Committee consented to the retrial, whether the Honor Committee, a purportedly independent student committee, was bound by the settlement agreement to allow the retrial and whether the grant of the retrial by the Honor Committee instead of an appeals panel was procedurally correct. In the wake of the outcome one Honor Committee member resigned and others of the committee spoke out against the retrial. In an Open Letter To The University published in the *University Journal* on September 5, 1994, the respondent, John T. Casteen, III, President of the University of Virginia, observed that Leggett had not received

a fair trial originally and that there was a real prospect of the University having to pay money damages to Leggett if the threatened lawsuit was filed.

The Court has reviewed the materials provided by the University as the ones petitioner is seeking. They consist of copies of correspondence back and forth between Williams & Connolly and University officials including letters to and from James J. Mingle, counsel for the University, and a draft complaint to be filed in the United States District Court for the Eastern District of Virginia. The correspondence names students involved in the case as well as faculty and committee members, advisors and counsel. They also consist of copies of Williams & Connolly expense statements and copies of legal fees statements listing the dates and hours devoted to the work. The word "redacted" is stamped on each page of most of the billings below where the word "explanation" appears. In other words the billings statements tell what the hours for the billings are, but do not provide any detail of the legal work done during the times indicated. After consideration, the Court has decided to allow disclosure of some of the documents but not all of them.

The policy underlying the Act is set out in § 2.1-340.1:

> By enacting this chapter the General Assembly ensures the people of this Commonwealth ready access to records in the custody of public officials . . . . The affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of any action taken at any level of government.

With regard to the way the FOIA disclosure provisions and the exemptions are to be construed the General Assembly has further provided in § 2.1-340.1:

> This chapter shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exception or exemption from applicability shall be normally construed in order that nothing which should be public may be hidden from any person.

In *Taylor v. Worrell Enterprises*, 242 Va. 219, 224 (1991), the Court articulated these considerations in applying exemptions under the purposes of the Act:

The General Assembly's implementation of an open government policy is realized by the Act itself. The General Assembly sought to ensure public access to governmental records and meetings, to avoid an "atmosphere of secrecy" in the conduct of government affairs, and to encourage resolution of disputes in these areas through agreement rather than litigation. § 2.1-340.1. The General Assembly does not consider the policy absolute, however, and currently has identified 44 instances in which certain information is exempt from mandatory disclosure. Taken together, these exemptions reflect the General Assembly's determination that the policy of openness does not override the need for confidentiality in every circumstance, that the best interests of the Commonwealth may require that certain governmental records and activities not be subject to compelled disclosure.

Under the Act, Va. Code § 2.1-342(B)(6) exempts from mandatory disclosure "memoranda, working papers and records compiled specifically for use in litigation . . . and material furnished in confidence with respect thereto." The Petitioner refers to this exemption as "work product." The University cites three additional bases to prevent disclosure. First, the materials requested include material developed in the investigatory phases of anticipated litigation. Second, since the materials identify University students, they are exempt under Federal law and § 2.1-342(B)(3) because they are "scholastic records . . . containing information concerning identifiable individuals." Third, because the correspondence includes that of University counsel, James J. Mingle, who is a special assistant attorney general, those letters are exempt under § 2.1-342(B)(4) as "[m]emoranda, working papers and correspondence . . . held by or requested by the office of . . . Attorney General." The Court finds that some of the exemptions apply here and others do not.

Regarding the "for use in litigation" exemption, as to the letters, § 2.1-342(B)(6) protects materials that are "[m]emoranda, working papers and records compiled specifically for use in litigation." This cannot be said to apply to the correspondence the court has seen between the University officials and Williams & Connolly. These are letters back and forth between the two about the case. They in no way are "memoranda, working papers . . . for use in litigation" things that might be kept by one side of a controversy from the other. A mere reading of the statute according to its plain meaning is enough to reach the conclusion that letters between William & Connolly and University administration officials do not fit

within any meaning of "memoranda, working papers and records and material furnished in confidence thereto." In addition, the whole of § 2.1-324(B)(6) provides that such "[m]emoranda, working papers and records compiled for use in litigation or as a part of an active administrative investigation *concerning a matter which is properly the subject of an executive or closed meeting under § 2.1-344 and material furnished in confidence with respect thereto.*" (Emphasis added.) There is no showing that any of this material concerns an executive or closed meeting.

The billing statements, most if not all of which I understand have been given to the petitioner, do not fit under this exemption either because they are not prepared "for use in litigation." *Lemond v. McElroy*, 239 Va. 515, 521 (1990).

Regarding the "scholastic records" exemption, the correspondence does name other students. Considering that there is some discussion of these other students in the administration of the examination that Leggett was alleged to have cheated on, names of those other named students should be taken out because the references go to reporting about their involvement in the complained of test, part of their course taking involvement at the University.

For these reasons, it is not necessary to reach the federal law Buckley Amendment objection raised by the University. Under the Buckley Amendment or the Family Educational Right and Privacy Act, 20 U.S.C. § 1232, no educational institution receiving federal funds can disclose the educational records of students without their written consent. The law conditions federal funding on maintaining the privacy of educational records other than directory information. "Directory information" means:

> [T]he student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student.

20 U.S.C. § 1232g(a)(5)(A).

As my examination of the correspondence reveals that other student names are mentioned and by that mentioning an exemption under the Virginia FOIA relating to scholastic records of those students applies and redaction is in order, again, it is not necessary to decide the Buckley Amendment objection. Moreover, petitioner, although arguing that the

scholastic record exemption under state and federal law does not apply, agrees in a letter that redaction of other student names would "solve all concerns."

Finally, there is the question of the exemptions claimed for "memoranda, working papers and correspondence held or requested . . . [by] the Attorney General" under § 2.1-342(B)(4). Under the foregoing principles, the Act is to be liberally construed to achieve the policy underlying the Act. It has also been held that giving liberal construction entails giving exemptions in the Act narrow construction. *Marsh v. Richmond Newspapers, Inc.*, 223 Va. 245, 255 (1982). The materials at issue relative to this exemption consist of correspondence between James Mingle, university counsel and special assistant attorney general, and counsel for Leggett, Williams & Connolly, about Leggett.

Correspondence, not defined in the Act is otherwise defined in Black's Law Dictionary as:

> Interchange of written communications. The letters written by a person and the answers written by the one to whom they are addressed.

A liberal construction of the Act and a narrow construction of this exemption does not result in disclosure of this correspondence because under the plain meaning of this statutory language the letters are "correspondence held by the office of the Attorney General." These letters are just that, correspondence, and thus exempt from disclosure under § 2.1-342(B)(4).

Accordingly, the Court will permit disclosure of the documents submitted and inspected *in camera* as follows: (1) letters between the University administration officials and Williams & Connolly with student names redacted; (2) the legal billings and expense statements; and (3) the draft complaint.